IN THE SUPREME COURT OF NORTH CAROLINA

No. 110A19

Filed 24 January 2020

IN THE MATTER OF: K.N.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 7 January 2019 by Judge H. Thomas Jarrell in District Court, Guilford County. This matter was calendared for argument in the Supreme Court on 17 January 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*

*K&L Gates, LLP, by Erica Hicks for Guardian ad Litem.*

*Jeffrey William Gillette for respondent-appellant father.*

DAVIS, Justice.

In this case, we consider whether the trial court erred by terminating the parental rights of respondent-father (respondent) to K.N. ("Keith")[1] on the basis of neglect. Because we conclude that the findings in the trial court's order are insufficient to support a determination that respondent had neglected Keith, we vacate the termination order and remand this case to the District Court, Guilford County, for further proceedings.

---

[1] Pseudonyms are used throughout this opinion to protect the identity of the juvenile.

**Factual and Procedural Background**

Respondent and "Maria"[2] are the biological parents of Keith, who was born on 17 September 2016. On or about 26 December 2016, the Guilford County Department of Health and Human Services (DHHS) received a report that Keith's parents were involved in a verbal dispute during which respondent claimed Maria was attempting to suffocate the child. Maria accused respondent of being intoxicated and holding onto Keith "too tightly" while they argued. Both Maria and Keith were taken to the hospital, but no injuries were discovered to either of them. Maria reported that respondent's relatives had "jumped" her the previous night and also disclosed several incidents of domestic violence between her and respondent.

On 10 January 2017, a safety plan with DHHS was updated and, as part of that plan, Maria agreed to keep Keith in a safe environment. However, on or about 29 January 2017, she violated the safety plan by returning to her mother's residence, which DHHS considered unsafe due to prior involvement with Child Protective Services and a history of domestic violence between Maria, her mother, and her brother. On 6 February 2017, DHHS obtained nonsecure custody of Keith and filed a juvenile petition in District Court, Guilford County, alleging that Keith was a neglected and dependent juvenile.

---

[2] Keith's mother is not a party to this appeal.

On 28 August 2017, the trial court entered an order adjudicating Keith to be a neglected and dependent juvenile. Pursuant to a case plan entered into with DHHS, respondent was ordered to participate in an anger management evaluation and follow all recommendations. He was allowed weekly visitations with Keith. Respondent was also ordered to comply with his case plan, which required him, among other things, to (1) secure and maintain appropriate housing suitable for Keith and to notify DHHS accordingly; (2) provide verification of his Supplemental Security Income (SSI) benefits; (3) participate in and successfully complete the Parent Assessment Training and Education (PATE) program; (4) submit to a substance abuse assessment and follow any recommendations; (5) participate in the Domestic Violence Intervention Program (DVIP); (6) notify DHHS of any incidents of domestic violence; (7) comply with the terms of his probation; and (8) refrain from incurring any new criminal charges. Keith remained in DHHS custody.

On 14 November 2017, the trial court entered a permanency planning hearing order. The court found that respondent was living in a boarding house and was on probation for thirty months, effective January 2017. He had completed a parenting evaluation but refused to engage in individual counseling—despite having received a recommendation to do so—due to the cost of the sessions. He had successfully completed the Treatment Accountability for Safer Communities (TASC) substance abuse program.

The trial court further found that respondent had indicated that he would take part in anger management classes, but then refused to participate in the DVIP program because "he had not been . . . charged as an abuser." As a result of his failure to "actively engage in his case plan," the court determined that respondent was "acting in a manner inconsistent with the health and safety of the juvenile." The trial court ordered that the permanent plan be reunification with a concurrent secondary plan of adoption.

The trial court entered a subsequent permanency planning hearing order on 5 February 2018. The court found that respondent was living in a location unsuitable for Keith and was continuing to refuse to participate in individual parenting counseling due to cost. Although he completed anger management classes, he had attended only one DVIP class and remained uninterested in the program. The trial court changed the primary permanent plan to adoption with a concurrent secondary permanent plan of reunification. DHHS was ordered to proceed with filing a petition for termination of respondent's parental rights within sixty days.

On 15 March 2018, DHHS filed a petition to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1)–(2).[3] The termination hearing was conducted on 27 and 28 November 2018. On 7 January 2019, the trial court entered

---

[3] DHHS also sought to terminate Maria's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (9).

an order finding that grounds existed to terminate respondent's parental rights on the basis that respondent had neglected Keith and that such neglect was likely to recur if the juvenile was returned to respondent. *See* N.C.G.S. § 7B-1111(a)(1).[4] The trial court also determined that the termination of respondent's parental rights was in the best interests of Keith. *See* N.C.G.S. § 7B-1110(a). Respondent gave notice of appeal to this Court pursuant to N.C.G.S. § 7B-1001(a1)(1).

**Analysis**

On appeal, respondent contends that (1) the trial court made various findings of fact that were not supported by the evidence; and (2) the court's findings were insufficient to support its conclusion that Keith was neglected pursuant to N.C.G.S. § 7B-1111(a)(1). Our Juvenile Code provides for a two-step process for the termination of parental rights—an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2017). During the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination pursuant to subsection 7B-1111(a) of the General Statutes of North Carolina. N.C.G.S. § 7B-1109(e), (f) (2017). If a trial court finds that a ground exists for termination, it then proceeds to the dispositional stage

---

[4] The trial court's order also terminated Maria's parental rights on the basis of neglect and additionally found that grounds existed to terminate her parental rights pursuant to N.C.G.S. § 7B-1111(a)(2) and (9).

at which it must "determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a).

We review a trial court's adjudicatory findings under N.C.G.S. § 7B-1109 "to determine whether [they] are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 832 S.E.2d 692, 695 (N.C. 2019) (citing *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), *aff'd per curiam*, 363 N.C. 368, 677 S.E.2d 455 (2009)).

In its termination order, the trial court made the following pertinent findings of fact in support of its conclusion that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1):

> 12. [Respondent] entered into a case plan on April 3, 2017. The components of the plan, and his progress therewith, are as follows:
>
> A. Housing/Environment/Basic Physical Needs: The father was to secure and maintain appropriate, independent housing suitable for his child. Once the father secured housing he was to provide DHHS with a copy of his lease with his name on it within 72 hours. He was to cooperate with announced and unannounced visits to his home. [Respondent] did ultimately obtain suitable housing, after a period of residing in boarding houses. However, he is currently incarcerated at the Guilford County Department of Corrections, awaiting trial for charges of DUI, Assault with a Deadly Weapon on a Government Official, F[lee]ing to Elude Arrest, Unlawful Passing of an

Emergency Vehicle, and Failure to stop at a Red Light. Although he has testified that he expects to make his $28,000.00 bond next week, the Court finds that it is uncertain when and if he will be released pending trial.

B. Employment: The father was to provide DHHS with verification of his SSI benefits. [DHHS] did ultimately independently receive verification of [respondent's] benefits. At that time [DHHS] sought, and obtained, transfer of the juvenile's portion of those benefits from [Maria] (who had been receiving them throughout the case) to [DHHS]. In addition to his SSI benefit, [respondent] works odd jobs and has just started a cleaning business. He has not provided financially for the juvenile, although the juvenile now does receive a $190.00 per month benefit from SSI.

C. Parenting Skills:

1) The father was to participate in a Parenting Psychological Evaluation and follow all recommendations. The father completed the Parenting Evaluation through Dr. Michael McColloch. Dr. McColloch recommended that [respondent] participate in individual counseling and continue to work his case plan in an effort to be reunified with his son. [Respondent] participated in individual therapy through Family Service[ ] of the Piedmont. In April of 2018 he was released from therapy with a determination that he had achieved his treatment goals.

2) The father was to participate in the PATE Parenting Classes or parenting classes through Family Service[ ] of the Piedmont until successfully completed and a certificate received. He was to visit with [Keith] once per week. [Respondent] completed the PATE Program on 10/03/17. He visited consistently with [Keith] and the visits were appropriate and went well, with no concerns to note.

3) The father was to contact Child Support Enforcement and enter into a voluntary child support agreement.

[Respondent] reported that he receives SSI and cannot be pursued for Child Support.

D. Substance Abuse: The father was to submit to a substance abuse assessment and follow all recommendations. The father successfully completed the TASC Program. However, [respondent] submitted three drug screens which came back as "diluted," on June 29, 2018, July 6, 2018, and August 27, 2018. [DHHS] regards diluted samples as failed screens. He was asked thereafter to take another screen, which he delayed taking by 36 hours. That test was negative for illicit substances.

E. Domestic Violence: The father was to participate in the Domestic Violence Intervention Program through Family Service[ ] of the Piedmont and . . . follow all recommendations. The father was to notify DHHS of any incidents of domestic violence between himself and any intimate partner. Initially [respondent] indicated that he did not understand why he had to participate in a domestic violence class when he had not been . . . charged as an abuser. Subsequently [respondent] did complete anger management classes but did not enroll in the DVIP program. Albert Linder, his individual therapist, testified that some domestic violence issues were addressed in individual counseling.

F. Probation: The father was to cooperate with the terms of his probation. The father was to resolve his pending criminal charges and not incur any new criminal charges. [Respondent] has violated his probation and his case plan by incurring new charges.

13. [DHHS] has failed to provide clear and convincing evidence that [respondent] has not made reasonable progress in his case plan.

. . . .

15. The father and the mother both receive SSI income and

are not required to pay child support. However, neither parent has provided any financial support for the juvenile since he came into the custody of [DHHS].

16. Grounds exist to terminate the parental rights of . . . [respondent] pursuant to N.C.G.S.[ ]§[ ]7B-1111(a)(1): The parents have neglected the juvenile within the meaning of N.C.G.S.[ ]§[ ]7B-101, and such neglect is likely to recur if the juvenile is returned to the respondent[ ].

We first address respondent's argument that certain findings of fact by the trial court were not supported by competent evidence. Respondent challenges the last sentence in Finding of Fact 12(B), arguing that the trial court's finding that he "has not provided financially for the juvenile" contradicts the court's following statement that Keith receives $190.00 per month from respondent's SSI benefits. Respondent testified at the termination hearing that he received $885.00 per month in SSI benefits, a portion of which was paid directly to DHHS for the care of Keith. He also testified that in addition to receiving SSI benefits, he had started a cleaning business with his son and did "odd jobs" to earn income. Thus, while the trial court noted that Keith was receiving an allotment of SSI benefits each month, it also found that respondent had not voluntarily contributed to the juvenile's care from the income he was earning through his business and odd jobs. Accordingly, we hold that the last sentence of Finding of Fact 12(B) is supported by the evidence.

Respondent also contends that Finding of Fact 12(E), which states that he "did not enroll in the DVIP program," was not supported by the evidence. We agree.

Testimony from a social worker at the termination hearing, as well as other evidence in the record, reveals that respondent participated in and completed the DVIP program through Family Service of the Piedmont on 14 August 2018. Although the record suggests that respondent initially resisted participating in the program and did not acknowledge that he engaged in domestic violence, there is nothing in the record that contradicts the social worker's testimony that respondent participated in and completed the DVIP program. As such, we must disregard the trial court's finding that respondent did not enroll in the DVIP program.

Finally, respondent challenges the last sentence of Finding of Fact 12(F), claiming that there was no evidence that he violated the terms of his probation by incurring new criminal charges. Although respondent concedes that the initiation of new criminal charges against him constituted a breach of his DHHS case plan, we disagree that there is nothing in the record indicating that the institution of the charges actually violated the terms of his probation. At the termination hearing, the social worker testified—without objection—that respondent had violated the conditions of his probation by incurring the new criminal charges. As a result, we hold that the last sentence of Finding of Fact 12(F) is supported by evidence in the record.

We next consider respondent's argument that the trial court's findings of fact are insufficient to support its conclusion that grounds exist to terminate his parental

rights on the basis of neglect. Subsection 7B-1111(a) allows for the termination of parental rights if the trial court finds the parent has neglected his child to such an extent that the child fits the definition of a "neglected juvenile" under N.C.G.S. § 7B-101(15). N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is statutorily defined, in pertinent part, as a juvenile "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2017). Generally, "[t]ermination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing." *In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) (citing *In re Ballard*, 311 N.C. 708, 713–15, 319 S.E.2d 227, 231–32 (1984)). However, "if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." *Id.* at 843, 788 S.E.2d at 167. When determining whether future neglect is likely, the trial court must consider evidence of relevant circumstances or events that existed or occurred either before or after the prior adjudication of neglect. *In re Ballard*, 311 N.C. at 715, 319 S.E.2d at 232. "The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding*." *Id.* at 715, 319 S.E.2d at 232.

Thus, in light of Keith's prior adjudication as a neglected juvenile and his resulting removal from the home, we must evaluate whether there are sufficient findings of fact in the termination order to support the trial court's ultimate conclusion that there is a likelihood of future neglect by respondent. Respondent asserts that absent the unsupported findings of fact in the trial court's order, the order lacks a sufficient factual basis to support the trial court's finding of neglect. We agree.

The trial court's findings reflect that DHHS had "failed to provide clear and convincing evidence that [respondent] had not made reasonable progress on his case plan" and that respondent had complied with the provisions of his case plan dealing with housing, SSI benefits, and participation in and completion of a psychological assessment, parenting education, substance abuse treatment, and anger management classes. The trial court made very few findings of fact that directly relate to respondent's ability to care for Keith or the extent to which respondent's behavior affected Keith's welfare. *See In re N.D.A.*, 833 S.E.2d 768, 775 (N.C. 2019). The only factual finding that directly addresses respondent's ability to care for Keith is Finding of Fact 12(A), in which the trial court found that although respondent had secured suitable housing, he was incarcerated at the time of the proceeding and awaiting trial on a number of criminal charges. At the termination hearing,

respondent testified that he anticipated paying his bond the following week, but the trial court found that "it is uncertain when and if he will be released pending trial."

A parent's incarceration may be relevant to the determination of whether parental rights should be terminated, but "[o]ur precedents are quite clear—and remain in full force—that '[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision.' " *In re M.A.W.*, 370 N.C. 149, 153, 804 S.E.2d 513, 517 (2017) (quoting *In re P.L.P.*, 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006)). Thus, respondent's incarceration, by itself, cannot serve as clear, cogent, and convincing evidence of neglect. Instead, the extent to which a parent's incarceration or violation of the terms and conditions of probation support a finding of neglect depends upon an analysis of the relevant facts and circumstances, including the length of the parent's incarceration. The trial court's findings do not contain any such analysis.

DHHS contends that the trial court's findings regarding respondent's failure to fully address the domestic violence component of his case plan by continuing to engage in domestic violence and by being dilatory in addressing issues related to domestic violence, his failure to make efforts to cooperate with DHHS regarding his substance abuse issues, and his failure to contribute significant earnings from his employment all support its ultimate conclusion that neglect is likely to recur if Keith is returned to respondent's care. We do not find this argument persuasive in light of

an analysis of the trial court's actual findings, which do not contain a considerable amount of the information upon which DHHS relies.

Finding of Fact 12(E) addressed concerns with respondent's involvement in incidents of domestic violence. Aside from the erroneous finding that respondent did not complete DVIP, this portion of the trial court's order does not establish that respondent failed to comply with the domestic violence-related portions of his case plan or engaged in continued acts of domestic violence against Maria or anyone else.

In Finding of Fact 12(D), the trial court addressed the substance abuse component of respondent's case plan. The court found that respondent had submitted three diluted drug screens in June, July, and August 2018 and that DHHS considered diluted samples as "failed screens." However, this finding—without greater explanation—is insufficient to support a determination as to the likelihood of future neglect. The trial court's findings state that respondent delayed taking another drug screen for thirty-six hours, but do not provide any further explanation concerning the extent to which the thirty-six-hour delay enabled him to ultimately provide a "clean" sample or even when the sample was requested and provided. In addition, the trial court's findings do not address the nature and extent of respondent's earlier substance abuse issues or whether the trial court, as compared to DHHS, deemed a "diluted" sample to be tantamount to a positive test result.

Finally, in Finding of Fact 12(B) and Finding of Fact 15, the trial court found that respondent had not provided financially for Keith since he came into DHHS custody. Yet, in Finding of Fact 15, the trial court also determined that respondent received SSI benefits and was not required to pay child support. Absent further findings by the trial court regarding respondent's finances and ability to pay additional support beyond the portion of SSI benefits going to Keith's care, we are unable to say that these portions of the trial court's order supported a finding of neglect.

As a result, for these reasons, we conclude that the trial court's findings are insufficient to support the court's ultimate determination that respondent's parental rights were subject to termination on the basis of neglect. We acknowledge, however, that the trial court *could* have made additional findings of fact, based on other evidence in the record, that might have been sufficient to support a finding of a future likelihood of neglect, including: (1) respondent's long history of drug abuse; (2) respondent's extensive criminal record which consists of drug convictions and convictions for multiple violent crimes; (3) the effect of respondent's serious criminal charges pending at the time of the termination hearing, the absence of any clear indication of when he would be released from custody or if he would be able to make bond, and the ensuing effect on his future ability to care for Keith; (4) respondent's dilatory pace in completing the objectives of his case plan; (5) respondent's hostility

toward the people responsible for managing certain programs in which he had refused to participate; and (6) the additional domestic violence incident involving respondent, Maria, and another woman during which respondent was cut with a knife. Moreover, as noted above, while the trial court stated in Finding of Fact 12(D) that respondent waited thirty-six hours to take a new drug test after providing three diluted samples, it appears from the record that the delay was actually *three days*, which could suggest an attempt on his part to manipulate the results of the drug test.

In *In re N.D.A.*, we recently addressed a similar scenario in which the trial court's adjudicatory findings were insufficient to support its conclusion that termination of the parent's rights was warranted, but the record contained additional evidence that could have potentially supported a conclusion that termination was appropriate. There, we vacated the trial court's termination order and remanded the case for further proceedings, including the entry of a new order containing findings of fact and conclusions of law addressing the issue of whether a ground for termination existed. *See In re N.D.A.*, 833 S.E.2d at 777.

We believe that a similar result is appropriate here. Accordingly, we vacate the trial court's termination order and remand this case to the District Court, Guilford County, for further proceedings not inconsistent with this opinion, including the entry of a new order containing appropriate findings of fact and conclusions of law on the issue of whether grounds exist to support the termination of respondent's

parental rights. On remand, the trial court shall have the discretion to determine whether the receipt of additional evidence is appropriate.

## Conclusion

For the reasons stated above, we vacate the 7 January 2019 order of the trial court and remand for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.