IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-146

 No. 530A20

 Filed 5 November 2021

 IN THE MATTER OF: W.K.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 22

 September 2020 by Judge Laurie L. Hutchins in District Court, Forsyth County. This

 matter was calendared for argument in the Supreme Court on 30 September 2021

 but determined on the record and briefs without oral argument pursuant to Rule 30(f)

 of the North Carolina Rules of Appellate Procedure.

 Andrew L. Fitzgerald for petitioner-appellees.

 No brief for appellee Guardian ad Litem.

 Peter Wood for respondent-appellant father.

 HUDSON, Justice.

¶1 This case involves a private termination of parental rights proceeding initiated

 by petitioners, the paternal grandmother and step-grandfather of W.K. (Wallace).1

 Respondent, Wallace’s father, appeals from the trial court’s order terminating his

 parental rights. We affirm.

 I. Factual Background and Procedural History

 1 A pseudonym is used to protect the identity of the juvenile and for ease of reading.
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

¶2 In April 2015, Wallace was born to respondent and Wallace’s biological mother

 in Virginia. Respondent and Wallace’s mother were never married. Wallace lived with

 his mother. Respondent did not live with them. On 25 November 2015, respondent

 was indicted on federal drug-related charges and subsequently pled guilty in the

 United States District Court for the Western District of Virginia to conspiracy to

 possess with intent to distribute fifty grams or more of methamphetamine. On 23

 September 2016, respondent was sentenced to a term of ninety-five months

 imprisonment, followed by four years of supervised release. His projected release date

 is 4 July 2022.

¶3 In June 2017, petitioners were contacted by the Wythe County Department of

 Social Services in Virginia after Wallace’s mother was arrested. A 16 June 2017 safety

 plan developed by the Wythe County Department of Social Services reflects

 allegations of physical and mental abuse and neglect of Wallace by his mother.

 Petitioners traveled to Virginia to pick up Wallace, and Wallace has been in

 petitioners’ custody in North Carolina since 16 June 2017. On 13 July 2017,

 petitioners were granted sole legal and physical custody of Wallace.

¶4 On 2 May 2019, petitioners filed a petition to adopt Wallace. That same day,

 petitioners filed a petition to terminate respondent’s parental rights. 2 Petitioners

 2 Petitioners also filed a petition to terminate the parental rights of Wallace’s mother,

 and her rights were terminated. She is not a party to this appeal.
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

 alleged that in December 2015, prior to having custody of Wallace, they reported to

 Wallace’s mother their observations that Wallace had weakness in the left side of his

 body and did not appear to be hitting age-appropriate milestones. However, Wallace’s

 mother did not seek medical attention for Wallace to address their concerns. After

 they took custody of Wallace, petitioners immediately established medical care for

 Wallace, and on 29 June 2017, Wallace was diagnosed with cerebral palsy. Wallace

 was also diagnosed with a vision development disorder. He has numerous medical

 caregivers, including a primary care provider, pediatric neurologist, pediatric

 orthopedist, occupational therapist, physical therapist, and speech therapist, and

 petitioners have managed all medical care for Wallace since June 2017.

¶5 Petitioners further alleged as follows: respondent failed to obtain adequate

 medical care for Wallace; Wallace had been abused or neglected by respondent;

 respondent was incapable of providing for the proper care and supervision of Wallace

 such that Wallace was a dependent juvenile, and there was a reasonable probability

 that the incapacity would continue for the foreseeable future; respondent had

 willfully abandoned Wallace for at least six consecutive months immediately

 preceding the filing of the petition; respondent had not had any physical contact or

 communication with Wallace since August 2018; and respondent had not made any

 payments to petitioners for the benefit of Wallace.

¶6 A hearing on the petition to terminate respondent’s parental rights was held
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

 on 14 July 2020. The trial court entered an order on 22 September 2020 concluding

 that grounds existed to terminate respondent’s parental rights in Wallace based on

 neglect, willfully leaving Wallace in a placement outside of the home for more than

 twelve months without making reasonable progress to correct the conditions that led

 to his removal, failure to pay child support, and willful abandonment. The trial court

 also determined that it was in Wallace’s best interests that respondent’s parental

 rights be terminated, and the court terminated his parental rights. Respondent

 appeals.

 II. Analysis

¶7 Initially, respondent argues that the trial court committed prejudicial error by

 terminating his parental rights when it failed to articulate the specific statutory

 grounds supporting termination. Respondent’s argument is based on the failure of

 the trial court to state in its “CONCLUSIONS OF LAW” section of the termination

 order which subsection of N.C.G.S. § 7B-1111 it was relying upon when determining

 that grounds existed to terminate his parental rights. We are not persuaded.

¶8 It is well established that in order to terminate a respondent’s parental rights,

 the trial court must “adjudicate the existence . . . of any of the circumstances set forth

 in G.S. 7B-1111.” N.C.G.S. § 7B-1109(e) (2019). “[T]he trial court must enter sufficient

 findings of fact and conclusions of law to reveal the reasoning which led to the court’s

 ultimate decision.” In re D.R.B., 182 N.C. App. 733, 736 (2007). Whether a trial court
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

 classifies statements as findings of fact or conclusions of law, “that classification

 decision does not alter the fact that the trial court’s determination concerning the

 extent to which a parent’s parental rights in a child are subject to termination on the

 basis of a particular ground must have sufficient support in the trial court’s factual

 findings.” In re N.D.A., 373 N.C. 71, 77 (2019).

¶9 Under N.C.G.S. § 7B-1111(a)(1), a trial court may terminate parental rights if

 it concludes that the parent has neglected the juvenile within the meaning of

 N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1) (2019). A neglected juvenile is defined,

 in pertinent part, as a juvenile “whose parent, guardian, custodian, or caretaker does

 not provide proper care, supervision, or discipline; or who has been abandoned; . . . or

 who lives in an environment injurious to the juvenile’s welfare.” N.C.G.S. § 7B-

 101(15) (2019).

 Termination of parental rights based upon this statutory
 ground requires a showing of neglect at the time of the
 termination hearing or, if the child has been separated
 from the parent for a long period of time, there must be a
 showing of a likelihood of future neglect by the
 parent. When determining whether such future neglect is
 likely, the district court must consider evidence of changed
 circumstances occurring between the period of past neglect
 and the time of the termination hearing.

 In re R.L.D., 375 N.C. 838, 841 (2020) (cleaned up).

¶ 10 Here, the trial court stated in finding of fact 88 that “[a]s to the ground of

 neglect in the for [sic] termination of parental rights, this Court has found herein
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

 neglect in the past in 2017.” Wallace was placed with petitioners in 2017 due to

 respondent’s and Wallace’s mother’s drug addictions and the injurious environment

 in which Wallace was living. The trial court further found that there was a high

 probability of future neglect by respondent because he had not demonstrated that he

 had overcome his drug habit through completing substance abuse treatment in

 prison, by attending Narcotics Anonymous, or by receiving negative drug tests, and

 he had not completed any significant substance abuse treatment for

 methamphetamine use. In addition, the trial court found that respondent’s pattern

 of inconsistent contact and lack of interest in Wallace, both before and after

 incarceration, revealed “a pattern of neglectful behavior and a higher likelihood of

 neglect in the future.” These findings clearly reveal the trial court’s reasoning which

 led to its ultimate determination to terminate respondent’s parental rights for neglect

 under N.C.G.S. § 7B-1111(a)(1). Moreover, as later discussed, this determination is

 supported by ample evidence and findings. Thus, any potential error is harmless. See

 In re Bluebird, 105 N.C. App. 42, 51 (1992) (holding that although “[t]he more efficient

 and prudent practice for trial courts is to delineate the specific grounds for

 termination,” the error is harmless when the findings of fact support a legal

 conclusion that grounds for termination exist).

¶ 11 Next, respondent argues that the trial court erred in concluding that grounds

 existed to terminate his parental rights based on neglect. We disagree.
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

¶ 12 “Our Juvenile Code provides for a two-step process for termination of parental

 rights proceedings consisting of an adjudicatory stage and a dispositional stage.” In

 re Z.A.M., 374 N.C. 88, 94 (2020) (citing N.C.G.S. §§ 7B-1109, -1110 (2019)). “At the

 adjudicatory stage, the petitioner bears the burden of proving by ‘clear, cogent, and

 convincing evidence’ the existence of one or more grounds for termination under

 section 7B-1111(a) of the General Statutes.” In re A.U.D., 373 N.C. 3, 5–6 (2019)

 (quoting N.C.G.S. § 7B-1109(f) (2019)). If the trial court finds the existence of one or

 more grounds to terminate the respondent’s parental rights, the matter proceeds to

 the dispositional stage where the court must determine whether terminating the

 parent’s rights is in the juvenile’s best interests. N.C.G.S. § 7B-1110(a).

¶ 13 We review a trial court’s adjudication of grounds to terminate parental rights

 “to determine whether the findings are supported by clear, cogent and convincing

 evidence and the findings support the conclusions of law.” In re E.H.P., 372 N.C. 388,

 392 (2019) (quoting In re Montgomery, 311 N.C. 101, 111 (1984)). “A trial court’s

 finding of fact that is supported by clear, cogent, and convincing evidence is deemed

 conclusive even if the record contains evidence that would support a contrary

 finding.” In re B.O.A., 372 N.C. 372, 379 (2019). Unchallenged findings are deemed

 to be supported by the evidence and are binding on appeal. In re Z.L.W., 372 N.C.

 432, 437 (2019). “The trial court’s conclusions of law are reviewable de novo on

 appeal.” In re C.B.C., 373 N.C. 16, 19 (2019).
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

¶ 14 Here, the trial court found that Wallace was born in April 2015, at a time when

 respondent was addicted to illegal drugs. In 2015, respondent was addicted to

 methamphetamines and supported his addiction by selling methamphetamines.

 After Wallace’s birth, respondent did not live with Wallace, had minimal contact with

 him, and did not bond with him. Respondent never paid child support to Wallace’s

 mother, who had custody of Wallace from his birth until 14 June 2017. Respondent

 was convicted in May 2016 in the United States District Court for the Western

 District of Virginia for conspiring to distribute methamphetamine and has a projected

 release date of July 2022. The trial court also made the following relevant findings of

 fact:

 48. This Court finds that [Wallace] was a neglected juvenile
 in June of 2017; neglect has been proven by clear cogent
 and convincing evidence. [Wallace] had cerebral palsy and
 blindness in his left eye for a considerable time period and
 the Respondents, both who were addicted to drugs, failed
 to treat these medical issues, or get adequate medical
 treatment causing [Wallace] to suffer. Further, while he
 was in the physical custody of Respondent/Biological
 mother, [Wallace] was left in an area accessible to illegal
 drugs and marijuana and left alone in an unsafe and
 injurious environment. Further, Respondent/Biological
 Father had a long history of criminal activity and drug
 addiction that led to his incarceration, and
 Respondent/Biological Father could not protect [Wallace]
 or provide safe placement for him.

 49. Since the Petitioners have had custody of [Wallace]
 from June 2017, [Wallace] has visited with
 Respondent/Biological Father at the Bennettsville, S.C.
 Federal Prison facility. The visits occurred in 2016, 2017,
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

and 2018 when [Wallace] was 2, 3, and 4 years old. He has
not visited with Respondent/Biological Father in 2019 and
in 2020, for a period of two years. [Wallace] does not
remember the visits with Respondent/Biological
Father. . . .

50. From June of 2017 to February 2020,
Respondent/Biological Father called his
mother[/]petitioner approximately once a month.
Respondent/Biological Father asked his mother for money
for his jail commissary account. Respondent/Biological
Father said “hello” to [Wallace] on some calls.
Respondent/Biological Father did not always ask to speak
to [Wallace]. When he did ask, he was never denied the
chance to speak to [Wallace]. Any of Respondent/Biological
Father’s conversations with [Wallace] at two and three
years old were not substantive communication. When
[Wallace] was 4 or 5, there was slightly more
communication but not much. Respondent/Biological
Father testified “it’s hard to get a child that age to talk”.
The Court finds there was no meaningful substantive
conversation between [Wallace] and Respondent/Biological
Father during the calls that established a bond or a
relationship between them. The Respondent/Biological
Father did not inquire about [Wallace’s] health, but the
Petitioners did tell Respondent/Biological Father about
updates on his serious health conditions. [Wallace] did not
call Respondent/Biological Father “Dad” on the phone calls.

51. Since June of 2017 to June 11, 2020, the
Respondent/Biological Father has sent emails on the
Federal Bureau of Prisons website Core Links to his
mother . . . . Respondent/Biological Father’s emails to her
were about his own status in jail and requests for money
and were not concerned about [Wallace]. [Respondent’s
mother] told him Respondent/Biological Father that
[Wallace] had cerebral palsy and about updates about
[Wallace’s] health. The Court finds that the emails did not
help establish a bond or relationship between
Respondent/Biological Father and [Wallace].
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

52. Respondent/Biological Father has not read books on
cerebral palsy or any of [Wallace’s] medical conditions or
educated himself on those topics by using the prison
library.

53. Respondent/Biological Father has never written a letter
to [Wallace]. Respondent/Biological Father sent [Wallace]
one birthday card. Respondent/Biological Father has been
in prison for all five of [Wallace]’s birthdays.

54. Respondent/Biological Father sent one gift to [Wallace]
at Christmas 2018 through the Toys for Tots program in
prison.

....

60. That [Wallace] has numerous medical and related
caregivers in Forsyth County, including, but not limited to
a primary care provider, a pediatric neurologist, a pediatric
orthopedist, an occupational therapist . . . , a physical
therapist . . . , speech therapists . . . , and psychologists.

....

74. Respondent/Father has not assisted, offered to assist,
contacted, or requested any information regarding
[Wallace]’s numerous providers.

....

77. Neither Respondent has assisted, offered to assist,
contacted, or requested any information about [Wallace]’s
daycare, early childhood, or school enrollment, or academic
progress.

....

79. The Respondent/Biological Father testified he has
completed a mandatory 12-hour substance abuse
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

treatment course in 2017. He did not offer into evidence a
certificate of completion. Therefore, the Court cannot
assess the program. The Court does not find by clear,
cogent, and convincing evidence that he completed a
substance abuse program.

80. Respondent/Biological Father testified that there is a
residential drug abuse treatment program [RDAP] for 12
months in the federal prison system. He stated he was on
a waitlist. Significant to the Court is that he has not
completed the program in the four (4) years he has been
incarcerated. If he had completed it, [Wallace] would have
been able to attend “family day” at prison and
Respondent/Biological Father would have been able to
spend quality time with [Wallace].

81. Respondent/Biological Father testified that he
completed a parenting course in prison in 2017. He did not
introduce a certificate of completion. Therefore, the Court
cannot assess the program. The Court does not find by
clear, cogent, and convincing evidence that
Respondent/Biological Father completed a parenting class.

82. [Respondent’s mother] testified that
Respondent/Biological Father has admitted to her he still
uses drugs in prison. She was concerned that the money
she sent him was used to pay for drugs. On one occasion,
she stated Respondent/Biological Father asked her to put
money in a third party commissary account. When
Petitioner looked up the third party on the Federal Bureau
of Prisons ‘Find An Inmate’ website, she found this third
person had been charged with selling drugs inside the
prison. The Court does not find by clear, cogent, and
convincing evidence that Respondent/Biological Father has
continued to use illegal drugs in prison. He is given random
drug screens in prison and no positive or negative tests
were introduced into evidence for the Court to consider and
make a finding of fact concerning drug use in prison.

....
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

84. Respondent/Biological Father has a daughter . . . who
is six months younger than [Wallace] . . . .
Respondent/Biological Father communicates with [his
daughter’s mother] weekly and speaks to [his daughter]
weekly. There was no evidence [his daughter] has special
needs. Respondent/Biological Father has paid child
support . . . [for his daughter] while incarcerated in
2016. . . . Respondent/Biological Father asks the
Petitioners to bring [his daughter] to visit him in prison,
but not [Wallace]. The Court finds as a fact that
Respondent/Biological Father favors [his daughter] over
[Wallace] in that he talks to her regularly, is interested in
her wellbeing, and has sent financial support for her
maintenance and not for [Wallace].

....

86. On June 11, 2020, Respondent/Biological Father
removed Petitioners from his email contact list on Core
Links. . . . This prevented email contact between the
parties from June 11, 2020, to present, approximately one
month. . . .

....

88. As to the ground of neglect in the for [sic] termination
of parental rights, this Court has found herein neglect in
the past in 2017. The Court must further determine
whether there is a future likelihood of neglect when the
child has been separated from the Respondents for a long
period of time. In the instant case, [Wallace] was placed
with the Petitioners in 2017 due to both of the Respondents’
drug addictions and injurious environments. When
Respondent/Biological Father was out on bail, he
attempted a thirty day inpatient program for his
methamphetamine addiction and failed to complete it.
There has been no substantial change in three years to
show the Court that either Respondent has beaten their
drug habits. There has been no substantial change in three
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

years to show the Court that the Respondent/Biological
Father has beaten his drug habit through substance abuse
treatment in prison, by attending NA, or by negative drug
tests. The Court finds there is high probability of neglect
by both of Respondents as neither has completed any
significant substance abuse treatment for
methamphetamine. [This is true even if the Court
considers Respondent/Biological Father’s 12 hours of
treatment, as it is not enough for his level of addiction].
Each of the Respondents’ future behavior as addicts or
using methamphetamines would create an injurious
environment and have a severely adverse impact on
[Wallace] and his course of treatment for serious medical
conditions. This failure of both Respondents to complete
substance abuse treatment is indicative of future neglect.
The Court finds as a fact that the future likelihood of
neglect has been proven by clear, cogent, and convincing
evidence.

89. Respondent/Biological Father’s incarceration is neither
a sword nor a shield for him in this case. His incarceration
does not shield him from his neglect of [Wallace]. The Court
has looked at the Respondent/Biological Father’s behavior
before and during his incarceration. In looking at his
behavior before incarceration, Respondent/Biological
Father has a long history of drug use and criminal activity
which leads to the conclusion that there is a high indication
of future neglect. Before his incarceration,
Respondent/Biological Father had no bond or relationship
with [Wallace]. His prior history of inconsistent visitation
and contact with [Wallace] [when he was in
Respondent/Biological Mother’s custody until the age of
two] shows the Court a pattern of neglect. After
Respondent/Biological Father’s incarceration, he has
continued a pattern of inconsistent contact with [Wallace]
through July of 2020 by sending no letters, sending one
card, and only sending one gift in 4 years. During his
[incarceration], the Respondent/Biological Father has
established no bond or relationship with [Wallace]. Both
periods of time, before and after incarceration, show
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

 inconsistent contact and lack of interest in [Wallace] by
 Respondent/Biological Father. This shows a pattern of
 neglectful behavior and a higher likelihood of neglect in the
 future.

¶ 15 Respondent challenges findings of fact 48, 50, 82, 88, and 89. With regard to

 finding of fact 48, petitioners’ exhibit 3, which was submitted into evidence at the

 termination hearing, detailed respondent’s lengthy criminal history dating back to

 2012. Respondent’s mother testified to respondent’s history of drug use and that

 drugs were found within Wallace’s reach while Wallace was in his mother’s custody.

 Respondent’s mother testified that as far back as December 2015, she observed

 Wallace and had concerns about his development. Wallace was not using his left arm,

 crawling, or attempting to stand. Respondent’s mother voiced her concerns to

 Wallace’s mother, but Wallace’s mother did not seek medical attention. Immediately

 upon gaining custody of Wallace, petitioners took Wallace to get examined, and he

 was diagnosed with cerebral palsy and blindness in his left eye. Therefore, the trial

 court’s finding of fact 48 is supported by clear, cogent, and convincing evidence.

¶ 16 As to finding of fact 50, testimony given at the termination hearing confirms

 that from the time petitioners had custody of Wallace until February, respondent

 would call his mother from prison approximately once a month. Petitioners testified

 that during these calls, respondent would ask his mother for money. Respondent

 testified that he would talk to Wallace on the phone “sometimes here and there.”

 While respondent’s mother allowed respondent to speak with Wallace, respondent
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

 admitted that he could not “hold a conversation with a child [Wallace’s] age.” Wallace

 stopped calling respondent “ ‘dad’ a while ago.” Petitioners testified that although

 they shared Wallace’s diagnoses with respondent, respondent did not inquire about

 Wallace’s diagnoses or status of his health, inquire about Wallace’s medical

 treatment, request copies of medical records, or ask for the names of Wallace’s

 medical providers. Thus, finding of fact 50 is supported by clear, cogent, and

 convincing evidence, and the trial court’s finding that there was “no meaningful

 substantive conversation” between respondent and Wallace is a reasonable inference

 from that evidence. See In re D.L.W., 368 N.C. 835, 843 (2016) (stating that it is the

 trial judge’s duty to consider all the evidence, pass upon the credibility of the

 witnesses, and determine the reasonable inferences to be drawn therefrom).

¶ 17 Record evidence also supports finding of fact 82. Respondent’s mother testified

 that respondent admitted to still using drugs in prison. Respondent asked her to put

 money in another prisoner’s account, and when respondent’s mother searched online

 for that inmate’s name, she discovered that inmate was under investigation for

 smuggling drugs into prison. Respondent later testified that the prison administered

 random drug tests. From this evidence, it was within the trial court’s discretion to

 not find by clear, cogent, and convincing evidence that respondent had continued to

 abuse illegal drugs in prison. See In re D.L.W., 368 N.C. at 843.

¶ 18 With regard to finding of fact 88, respondent’s mother testified that prior to
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

respondent pleading guilty to conspiracy to possess with intent to distribute fifty

grams or more of methamphetamine in May 2016, he was out on bail. During this

time, respondent began a thirty-day inpatient program for his drug addiction but

failed to complete it. In June of 2017, Wallace entered petitioners’ custody after his

mother was arrested. Respondent testified that he finished a twelve-hour substance

abuse treatment program in 2017. However, an unchallenged finding of fact, which

is binding on appeal, establishes that respondent did not offer a certificate of

completion for the twelve-hour program, and the trial court could not find by clear,

cogent, and convincing evidence that he actually completed the program.

Unchallenged finding of fact 80 also indicates that there was a twelve-month

residential drug treatment program available to respondent, but he failed to complete

the program during the four years he had been incarcerated. As such, the trial court’s

finding of fact 88 is supported by clear, cogent, and convincing evidence. Based upon

the foregoing evidence and findings, the trial court made the reasonable inference

that respondent had not made any substantial change in three years to demonstrate

he had overcome his substance abuse issues and that respondent’s future behavior of

abusing drugs would create an injurious environment for Wallace. See id. The trial

court’s determination that there existed a high probability of future neglect by

respondent is more properly classified a conclusion of law, see Sparks, 362 N.C. at

185, and we address respondent’s challenge to this conclusion later.
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

¶ 19 Finally, respondent challenges finding of fact 89, but this finding is supported

 by clear, cogent, and convincing evidence. As previously discussed, petitioners’ exhibit

 3 reveals respondent’s lengthy criminal history, and respondent’s mother attested to

 respondent’s history of drug use. Respondent was not present at Wallace’s birth, and

 between Wallace’s birth and respondent’s arrest, Wallace visited respondent’s house

 twice. During his four years of incarceration, respondent admitted to sending no

 letters, sending a single birthday card, and sending only one gift to Wallace.

 Respondent would talk to Wallace on the phone “sometimes here and there” when he

 called petitioners but stated that it was difficult to “hold a conversation” with

 Wallace. Wallace’s guardian ad litem testified that Wallace considered petitioners his

 parents, not respondent or Wallace’s mother. Accordingly, the trial court’s finding of

 fact 88 is supported by clear, cogent, and convincing evidence. The trial court

 reasonably inferred from the foregoing evidence that respondent’s inactions showed

 inconsistent contact and lack of interest in Wallace. See In re D.L.W., 368 N.C. at 843.

 The trial court’s determination that this showed a pattern of neglectful behavior and

 a higher likelihood of neglect in the future is more properly classified a conclusion of

 law, see Sparks, 362 N.C. at 185, and we address respondent’s challenge to this

 conclusion next.

¶ 20 Respondent argues that evidence at the termination hearing showed his

 changed circumstances, in that he was no longer “the same man who had plead guilty
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

 and went to prison” and that “[g]iven the steps taken by [him], the trial court

 erroneously found a probability of future neglect.” He specifically contends that given

 his inability to pay child support and the efforts he made by taking advantage of

 programs offered in prison, the trial court erred in concluding there was a probability

 of future neglect. We disagree.

¶ 21 “Our precedents are quite clear—and remain in full force—that

 ‘[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of

 parental rights decision.’ ” In re M.A.W., 370 N.C. 149, 153 (2017) (alteration in

 original) (quoting In re P.L.P., 173 N.C. App. 1, 10 (2005)). Incarceration

 “does not negate a father’s neglect of his child” because
 “[t]he sacrifices which parenthood often requires are not
 forfeited when the parent is in custody.” Thus, while
 incarceration may limit a parent’s ability “to show
 affection, it is not an excuse for [a parent’s] failure to show
 interest in [a child’s] welfare by whatever means
 available . . . .”

 In re S.D., 374 N.C. 67, 76 (2020) (alterations in original) (quoting In re C.L.S., 245

 N.C. App. 75, 78, aff’d per curiam, 369 N.C. 58 (2016)).

¶ 22 Respondent’s argument that he lacked the ability to pay any child support

 because he only made $14 a month is undermined by the trial court’s unchallenged

 finding that he sent money for his daughter’s care while he was incarcerated.

 Moreover, the trial court also found, based on respondent’s testimony, that

 respondent made small salaries from various positions he had while in prison but did
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

 not provide support for Wallace. See, e.g., In re Bradshaw, 160 N.C. App. 677, 682

 (2003) (affirming termination of parental rights based on neglect when the

 incarcerated respondent was able to earn a small income in prison but failed to

 provide any financial aid to the petitioner in support of his child).

¶ 23 Respondent’s contention that the efforts he made by taking advantage of

 programs offered by the prison are likewise without merit. It is undisputed that

 Wallace was placed with petitioners in 2017 due to both respondent’s and Wallace’s

 mother’s drug addictions and the injurious environment in which Wallace was living.

 The record demonstrates that respondent was incarcerated prior to the period of past

 neglect in June 2017 and was still incarcerated at the time of the termination hearing.

 Unchallenged finding of fact 80 establishes that during the four years respondent had

 been incarcerated, he did not engage in a residential drug abuse treatment program

 accessible to him through the prison system. This program would have given

 respondent the opportunity to spend quality time with Wallace through the

 attendance at “family day” in the prison. Unchallenged findings 79 and 81 also

 establish that respondent could not produce proof that he completed a twelve-hour

 substance abuse program and parenting course available to him in prison, and thus

 the trial court could not find by clear, cogent, and convincing evidence that

 respondent completed either. The foregoing findings support the trial court’s

 determination that because respondent had not completed substance abuse
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

 treatment, there had not been a substantial change in circumstances occurring

 between the period of past neglect and the time of the termination hearing.

¶ 24 In addition, the evidence and findings show that respondent made minimal

 efforts to show interest in Wallace’s welfare while incarcerated. The last time

 respondent saw Wallace was in 2018. Although respondent called his mother

 approximately once a month, he did not always request to speak with Wallace and

 when he did, there was no meaningful, substantive conversation between them.

 Respondent’s communications with his mother concerned his status in jail and

 requests for money. Despite being informed of Wallace’s serious medical conditions

 from petitioners, respondent failed to inquire about Wallace’s health, ask for updates

 on Wallace’s serious health conditions, research any of Wallace’s medical conditions,

 or request any information regarding Wallace’s healthcare providers. In addition, he

 failed to request any information about Wallace’s daycare or academic progress.

 While he was in prison for all five of Wallace’s birthdays, he only sent a single

 birthday card to Wallace, never wrote a letter to Wallace, and sent only one

 Christmas gift to Wallace. Respondent removed petitioners from his email contact

 list in early June 2020, preventing the parties from communicating. Moreover, the

 evidence and findings show how differently he treated his daughter by

 communicating with her weekly, sending money for her benefit, inquiring about her

 welfare, and requesting that petitioners bring her to visit him in prison but not asking
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

 that they bring Wallace.

¶ 25 The record evidence and the trial court’s findings establish that respondent

 had not completed substance abuse treatment by the time of the termination hearing,

 and he failed to show interest in Wallace’s welfare through the means available to

 him. Thus, the trial court reasonably concluded that there was a high probability that

 Wallace would be neglected in the future were he placed in respondent’s care. See In

 re D.L.A.D., 375 N.C. 565, 572 (2020) (holding that the trial court reasonably

 concluded the minor child would be neglected in the future if he were placed in the

 respondent-mother’s care when she originally stated she wished to have her parental

 rights terminated, did not attempt to visit her child for a period of over a year, had

 substance abuse issues and no evidence showed she ever received treatment for those

 issues, and her boyfriend who had substance abuse issues lived in her home); In re

 S.D., 374 N.C. at 87−88 (holding that evidence supported findings of past neglect and

 a repetition of neglect when the respondent had a history of criminal activity and

 substance abuse that resulted in his incarceration, failed to establish a relationship

 with his daughter prior to her being removed from the mother’s care, only made

 minimal efforts to show interest in his daughter while incarcerated, failed to develop

 a relationship with or show an ability to care for his daughter since his release from

 incarceration, and failed to make significant progress toward correcting the barriers

 to reunification).
 IN RE W.K.

 2021-NCSC-146

 Opinion of the Court

¶ 26 The trial court’s finding that Wallace was previously neglected, which

 respondent does not challenge, and its determination that there was a high

 probability of a repetition of neglect support its conclusion that grounds existed to

 terminate respondent’s parental rights under N.C.G.S. § 7B-1111(a)(1). Because we

 uphold the trial court’s adjudication of grounds to terminate respondent’s parental

 rights under N.C.G.S. § 7B-1111(a)(1) and respondent does not challenge the trial

 court’s best interests determination at the dispositional stage, we do not address

 respondent’s remaining arguments3 and affirm the trial court’s order terminating his

 parental rights in Wallace. In re Moore, 306 N.C. 394, 404 (1982) (holding that an

 appealed order should be affirmed when any of the grounds for termination upon

 which the trial court relied are supported by findings of fact based on clear, cogent,

 and convincing evidence); see also N.C.G.S. § 7B-1111(a) (“The court may terminate

 the parental rights upon a finding of one or more [grounds for termination.]”).

 AFFIRMED.

 3 Respondent challenges the trial court’s conclusion that grounds existed to terminate

 his parental rights under N.C.G.S. § 7B-1111(a)(2)–(3), (7). He also argues that the petition
 to terminate his parental rights failed to provide sufficient notice that petitioners were
 alleging grounds under N.C.G.S. § 7B-1111(a)(2).