McGEE, Chief Judge.
*76 Respondent-Father ("Respondent") appeals from an order terminating his parental rights[1] as to his minor child, C.L.S. We affirm the trial court's order.
New Hanover County Department of Social Services ("DSS") filed a petition on 20 September 2013, alleging that C.L.S. was a neglected and dependent juvenile. DSS alleged that C.L.S. tested positive for cocaine and PCP at birth, and that C.L.S.'s mother tested positive for cocaine. The mother further admitted to using cocaine and marijuana while pregnant with C.L.S. DSS alleged that C.L.S.'s mother "ha[d] a long history with [DSS] dating back many years," noting that she had relinquished her parental rights to another child who also tested positive for cocaine at birth. DSS also alleged that the mother had "a long history of substance abuse, and mental health issues and a drug-related criminal history," and was unemployed and living with her mother, who "also ha[d] a long history of involvement with DSS and would not [be] recommended for placement" of C.L.S. DSS further alleged that the mother reported that C.L.S. was "the product of a one night stand and the father [wa]s unknown."
The trial court adjudicated C.L.S. neglected and dependent on 15 November 2013 based upon the mother's stipulations to the allegations in DSS's petition. At the time of the adjudication, the identity of C.L.S.'s father was still unknown. Paternity tests in May 2014 determined Respondent was the father of C.L.S. The trial court ceased reunification efforts and changed the permanent plan for C.L.S. to adoption on 29 September 2014.
DSS filed a petition to terminate parental rights as to C.L.S. on 14 October 2014 on the grounds that both the mother and Respondent neglected C.L.S., had willfully abandoned C.L.S. for more than twelve months without showing reasonable progress in correcting the *77 conditions of neglect which led to his removal, and that Respondent had failed to take steps to legitimize C.L.S. In its petition, DSS alleged that Respondent failed to enter into a Family Services Agreement when requested on 7 April 2014 indicating that "he did not wish to pursue a plan of reunification." Although Respondent then "indicated his willingness" to enter into a case plan on 26 June 2014, Respondent "declined to sign his case plan which included requests to submit to a Comprehensive Clinical Assessment and follow any recommendations, submit to random drug screens, complete a parenting assessment and comply with any recommendations, and obtain and maintain stable housing and employment." Respondent was also incarcerated in May *682 2014 on pending charges said to have included attempted first- or second-degree rape, second-degree kidnapping, breaking or entering, misdemeanor larceny, false fire alarm, resisting, delaying, or obstructing public officers, and for being a habitual felon. The trial court terminated both the mother's and Respondent's parental rights as to C.L.S. on 4 March 2015. Respondent appeals.
Respondent first contends the trial court erred by concluding that there was clear, cogent, and convincing evidence to support the trial court's conclusion that C.L.S. was neglected by Respondent at the time of the hearing, and thus asserts that there was no evidence to terminate his parental rights on this statutory ground. We disagree.
N.C. Gen.Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. N.C. Gen.Stat. § 7B-1111 (2013). A finding of any one of the separately enumerated grounds is sufficient to support termination. See In re Taylor, 97 N.C.App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D., D.M.D., S.J.D., J.M.D., 171 N.C.App. 230, 238, 615 S.E.2d 26, 32 (2005).
In the present case, the trial court first concluded that grounds existed to terminate Respondent's parental rights to C.L.S. based upon neglect in accordance with N.C. Gen.Stat. § 7B-1111(a)(1). A "neglected" juvenile is defined in N.C. Gen.Stat. § 7B-101(15) as
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an *78 environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen.Stat. § 7B-101(15) (2013). Thus, "[n]eglect is more than a parent's failure to provide physical necessities and can include the total failure to provide love, support, affection, and personal contact." In re D.J.D., 171 N.C.App. at 240, 615 S.E.2d at 33 (internal quotation marks omitted).
Additionally, "[i]ncarceration alone ... does not negate a father's neglect of his child," Whittington v. Hendren, 156 N.C.App. 364, 368, 576 S.E.2d 372, 376 (2003), because "[t]he sacrifices which parenthood often requires are not forfeited when the parent is in custody." Id. Thus, while incarceration may limit a parent's ability "to show affection, it is not an excuse for [a parent's] failure to show interest in [a child's] welfare by whatever means available, [because a] father's neglect of his child cannot be negated by incarceration alone." In re D.J.D., 171 N.C.App. at 240, 615 S.E.2d at 33 (citation and internal quotation marks omitted).
Further, "[a]s always, the best interests of the children and parental fitness at the time of the termination hearing are the determinative factors." Id. at 239-40, 615 S.E.2d at 33 (emphasis added). Where "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect," In re Pierce, 146 N.C.App. 641, 651, 554 S.E.2d 25, 31 (2001), aff'd, 356 N.C. 68, 565 S.E.2d 81 (2002), "because requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." Id.
In the present case, evidence was presented by the DSS social worker that, when Respondent's paternity of C.L.S. was confirmed, Respondent "stated that he didn't want to pursue a plan of reunification" with C.L.S. The DSS social worker also testified that, before Respondent was incarcerated, she "attempted to engage [Respondent] a couple of times by asking him to come in and meet with [her] and enter into a visitation plan, and he called to reschedule a couple of times, [and then] he no-showed a couple of times to those appointments." Although the DSS social worker testified that, after Respondent *683 was incarcerated, he "did say that he wanted to enter into a case plan," when she "brought the case plan with [her] to visit him in jail, ... he declined to sign [it], saying that he wanted the input of his attorney before signing it," and when she asked Respondent about it several times after that, she "never received it back from him." The DSS social worker further testified that Respondent *79 never provided any financial support for C.L.S., never met C.L.S., and, although he "discussed visitation briefly" with DSS before the paternity results were completed, Respondent "was never able to come back to [DSS] for any of [the] scheduled meetings." Thus, the record before us reflects that, at the time of the termination hearing, Respondent had failed "to provide love, support, affection, and personal contact" to C.L.S.See In re D.J.D., 171 N.C.App. at 240, 615 S.E.2d at 33. Because this evidence supported the trial court's findings that Respondent "indicated an unwillingness to enter a Family Services Agreement," " ha[d] never met [C.L.S.]," and "ha[d] no bond with" C.L.S., we conclude that there was evidence to support the trial court's conclusion that the juvenile was neglected by Respondent and, thus, that there was evidence to terminate his parental rights on this statutory ground. Since we have "determine[d] there is at least one ground to support [the] conclusion that [Respondent's] parental rights should be terminated, it is unnecessary to address the remaining grounds" challenged in Respondent's brief. See In re P.L.P., 173 N.C.App. 1, 8, 618 S.E.2d 241, 246 (2005) aff' d per curiam, 360 N.C. 360, 625 S.E.2d 779 (2006).
AFFIRMED.
Judge STEPHENS concurs.
Judge TYSON dissents with a separate opinion.

The parental rights of the mother of C.L.S. were also terminated by the 4 March 2015 order, but the mother does not appeal from this order.