IN THE SUPREME COURT OF NORTH CAROLINA

No. 279PA16

Filed 29 September 2017

IN THE MATTER OF: M.A.W.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 787 S.E.2d 461 (2016), reversing an order entered on 12 August 2015 by Judge J.H. Corpening, II in District Court, New Hanover County. Heard in the Supreme Court on 28 August 2017.

*Regina Floyd-Davis for New Hanover County Department of Social Services, petitioner-appellant.*

*Parker Poe Adams & Bernstein LLP, by William L. Esser IV, for appellant Guardian ad Litem.*

*Rebekah W. Davis for respondent-appellee father.*

JACKSON, Justice.

In this appeal we consider whether the trial court erred by terminating respondent's parental rights on the basis of neglect. Because we conclude that the findings in the trial court's order were sufficient to support termination of respondent's parental rights based upon neglect, we reverse the Court of Appeals' determination that the trial court had erred.

On 11 March 2013, the New Hanover County Department of Social Services (DSS) filed a petition alleging that the minor child M.A.W.[1] was a neglected juvenile. The petition alleged that M.A.W.'s mother "has a history of substance abuse and mental health issues." At the time the petition was filed, respondent father was incarcerated on charges of habitual impaired driving.

At the adjudication hearing on 12 June 2013, the trial court found that M.A.W.'s mother had tested positive for use of the controlled substance commonly known as Percocet without having a valid prescription for the drug. In addition, the trial court found that the mother's history of both substance abuse and mental health issues previously had interfered with her ability to provide appropriate care for her children. The trial court also noted that DNA testing had confirmed respondent's paternity and that respondent had reported participation in various services available to him during his incarceration, including a parenting class and Alcoholics Anonymous meetings. In addition, the trial court observed that respondent had requested a home study on his mother for consideration of placement for M.A.W.

Based upon these and other findings of fact, the trial court concluded as a matter of law that M.A.W. was "neglected" as defined by N.C.G.S. § 7B-101(15) and that it was in the best interest of the child to remain in the legal custody of DSS, which had the discretion to provide or arrange for foster care or another placement.

---

[1] The Court is using initials to protect the identity of the child.

The mother was ordered to comply with her Family Services Agreement, which included participating in treatment for substance abuse and mental health issues; submitting to random drug and alcohol screens; and finding and maintaining suitable housing and employment. Respondent was ordered to enter into a Family Services Agreement and to access services available to him during his incarceration—specifically parenting courses and substance abuse treatment programs. The trial court's order also established a visitation schedule for the mother and for respondent upon his release from incarceration.

After numerous permanency planning review hearings, on 10 April 2014, M.A.W.'s mother voluntarily relinquished her parental rights and executed consent for M.AW.'s adoption by M.A.W.'s maternal relatives. The trial court's 5 May 2014 permanency planning order relieved DSS of reunification efforts with the mother. The order also reported that respondent was still incarcerated, that he "has a drinking problem," and that "[h]is continued sobriety is paramount to any plan of reunification." The trial court added that prior to his incarceration, respondent "reports that he provided for the child financially and emotionally," "was aware of [the mother]'s substance abuse," and had "anticipated the Department's intervention." The trial court endorsed reunification with respondent as the permanent plan for the child and ordered respondent to contact DSS within three days of his release.

Respondent was released from incarceration on 29 August 2014. At a 4 September 2014 permanency planning review hearing, DSS stated that termination of parental rights was not appropriate because respondent needed to be afforded the opportunity to enter into a case plan. At the next review hearing on 8 January 2015, the trial court found, *inter alia*, that respondent had denied several requests from DSS to access the home of his mother, with whom he purported to live, that the court did not know where respondent was residing, and that respondent's initial regular visits with M.A.W. had declined in consistency. Further noting respondent's indication of his ability to pay child support arrearages for another child he had fathered, the trial court determined that respondent intended to disregard child support payments for M.A.W. Based upon these and other findings of fact, the trial court permitted DSS to cease reunification efforts with respondent and changed the permanent plan for M.A.W. to adoption.

On 10 February 2015, DSS filed a petition to terminate respondent's parental rights as to M.A.W. on the grounds of "neglect" and "failure to legitimate." N.C.G.S. § 7B-1111(a)(1), (5) (2015). Following a hearing, the trial court concluded that respondent had neglected M.A.W., and it found "a high probability that there [would] be a repetition of neglect, and that the neglect [would] continue in the foreseeable future." The trial court entered an order on 12 August 2015 terminating respondent's parental rights based upon neglect in accord with N.C.G.S. § 7B-1111(a)(1). Respondent appealed to the Court of Appeals.

In a unanimous opinion filed on 21 June 2016, the Court of Appeals reversed the trial court's termination of respondent father's parental rights, holding that the trial court erred in concluding grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1) to terminate respondent's parental rights. *In re M.A.W.*, ___ N.C. App. ___, ___, 787 S.E.2d 461, 463 (2016). The Court of Appeals stated that "while there was a prior adjudication of neglect, the party responsible for the neglect was the juvenile's mother, not father." *Id.* at ___, 787 S.E.2d at 463. The court further reasoned that "[w]ithout evidence of any prior neglect, [DSS] failed to show neglect at the time of the hearing." *Id.* at ___, 787 S.E.2d at 463 (citing *In re J.G.B.*, 177 N.C. App. 375, 382, 628 S.E.2d 450, 455 (2006)). The Court of Appeals also determined that "the evidence, as well as the trial court's findings, [did] not support a conclusion that there was ongoing neglect at the time of the termination hearing." *Id.* at ___, 787 S.E.2d at 463. Accordingly, the Court of Appeals reversed the order entered by the trial court. DSS appealed to this Court.

Before this Court, DSS argues that the Court of Appeals incorrectly opined that, because respondent was incarcerated at the time of M.A.W.'s removal, he therefore could not have neglected the child. DSS also contends that the Court of Appeals failed to consider the trial court's findings of fact outlining respondent's failures to comply with the directives of that court after his release from incarceration. We agree.

In any proceeding such as this, we are reminded that "the fundamental principle underlying North Carolina's approach to controversies involving child neglect and custody [is] that the best interest of the child is the polar star." *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984). Our General Statutes provide that a juvenile shall be deemed neglected if the court finds the juvenile to be a "neglected juvenile" within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is statutorily defined, in pertinent part, as a juvenile "who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; . . . or who lives in an environment injurious to the juvenile's welfare." *Id.* § 7B-101(15) (2015). As in the present case, "if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) (citing *In re Ballard*, 311 N.C. 708, 713-15, 319 S.E.2d 227, 231-32 (1984)). If past neglect is shown, the trial court also must then consider evidence of changed circumstances. *In re Ballard*, 311 N.C. at 715, 319 S.E.2d at 232.

In a recent case affirmed per curiam by this Court, a child was adjudicated neglected because of the mother's substance abuse. *In re C.L.S.*, ___ N.C. App. ___, ___, 781 S.E.2d 680, 681, *aff'd per curiam*, 369 N.C. 58, 791 S.E.2d 457 (2016). The identity of the father was unknown at the time the adjudication order was entered in that case. *Id.* at ___, 781 S.E.2d at 681. Paternity was then established while the

father was incarcerated, and the trial court ceased reunification efforts with the father several months later. *Id.* at ___, 781 S.E.2d at 681-82. The father in *In re C.L.S.* initially indicated his willingness to enter into a case plan, but subsequently failed to comply with the case plan recommendations and failed to obtain and maintain stable housing and employment. *Id.* at ___, 781 S.E.2d at 681. Subsequently, DSS moved to terminate both parents' parental rights on the grounds of neglect. *Id.* at ___, 781 S.E.2d at 681. The trial court terminated both parents' parental rights and the father appealed. *Id.* at ___, 781 S.E.2d at 682. The Court of Appeals majority affirmed the trial court's decision, but the dissent contended that the prior adjudication order could not be used as evidence of past neglect as to the father because the sole party responsible for the neglect was the mother. *Id.* at ___, 781 S.E.2d at 683-84 (Tyson, J., dissenting). Notwithstanding the father's incarceration and lack of established paternity at the time of the neglect adjudication, this Court affirmed the Court of Appeals' decision affirming the trial court's order terminating the father's parental rights. *In re C.L.S.*, 369 N.C. 58, 791 S.E.2d 457 (2016).

Similarly, the neglect allegations in the instant case were based on the mother's actions, and the prior adjudication of neglect occurred while respondent was incarcerated. Our precedents are quite clear—and remain in full force—that "[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." *In re P.L.P.*, 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005)

(quoting *In re Yocum*, 158 N.C. App. 198, 207-08, 580 S.E.2d 399, 405 (Tyson, J., dissenting), *aff'd per curiam*, 357 N.C. 568, 597 S.E.2d 674 (2003)), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006). "[A] prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." *In re Ballard*, 311 N.C. at 713-14, 319 S.E.2d at 231. During a proceeding to terminate parental rights, "the trial court must admit and consider all evidence of relevant circumstances or events which existed or occurred *either before or after* the prior adjudication of neglect." *Id.* at 716, 319 S.E.2d at 232-33. As the trial court did in *In re C.L.S.*, the trial court here also appropriately considered the prior adjudication of neglect as relevant evidence during the termination hearing. Furthermore, in the present case the trial court made an independent determination that neglect sufficient to justify termination of respondent's parental rights existed at the time of the termination hearing and that a likelihood of repetition of neglect also existed. *Cf. id.* at 716, 319 S.E.2d at 233 (reversing a trial court's order terminating the respondent's parental rights when the trial court failed to make an independent determination of whether neglect authorizing termination of the respondent's parental rights still existed at the time of the termination hearing).

"[A] prior adjudication of neglect standing alone" likely will be insufficient "to support a termination of parental rights" in cases in which "the parents have been deprived of custody for any significant period before the termination proceeding." *In*

*re Ballard*, 311 N.C. at 714, 319 S.E.2d at 231 (citing *In re Barron*, 268 Minn. 48, 53, 127 N.W.2d 702, 706 (1964)). We also are mindful that "[i]n determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent." *In re Montgomery*, 311 N.C. at 109, 316 S.E.2d at 252.

Here, however, the evidence of prior neglect does not stand alone. In addition to the prior adjudication of neglect, the trial court found that respondent had a long history of criminal activity and substance abuse. Moreover, respondent stipulated to the allegations of neglect that led to M.A.W.'s adjudication as a neglected juvenile and also testified during the hearing on the petition to terminate parental rights that he was aware of the substance abuse issues of M.A.W.'s mother, stating that he "knew it wouldn't be too long that [DSS] would try to take [M.A.W.] too."

The other striking similarity to the facts present in *In re C.L.S.* is that respondent initially indicated his desire to be involved in M.A.W.'s life but after his release, failed to follow through consistently with the court's directives and recommendations. The trial court considered these actions of respondent in evaluating whether there was a likelihood of repetition of neglect. Although respondent completed a parenting course, attended Alcoholics Anonymous meetings, and completed his General Educational Development (GED) program while incarcerated, the trial court made numerous relevant findings of fact supporting

termination that illuminated respondent's behavior following his release and which established a likelihood of repetition of neglect.

The trial court previously emphasized the importance of respondent's sobriety based on his history of alcohol abuse, and noted in its order that as of the 29 June 2015 hearing, respondent had "not begun to participate in any aspect of the recommendations from [his] Drug & Alcohol Assessment." In addition, the trial court "stressed the importance of regular visitation" so that respondent could "establish a father/daughter bond" with M.A.W. Upon his release, respondent was afforded, and initially took advantage of, weekly visitation with the child; however, the trial court found that the regularity of his visits diminished over time. The trial court made several other relevant findings of fact supporting termination:

> 7. . . . The Department has not seen a certificate of completion of parenting, nor is the Department specifically aware of the dynamics of said parenting course.
>
> . . . .
>
> 10. . . . [Respondent] was neither forthcoming with the Department nor compliant with the directives of this Court. The Department attempted to confirm [respondent's] permanent address as given to the Social Worker; however, [she] was denied access to his mother's home . . . .
>
> 11. . . . At a hearing held on 08 January 2015, [respondent] indicated employment with [a cleaning and painting service] averaging $500.00 per week. At this time, [respondent] maintains that he is self-employed . . . . [The trial court] finds his testimony be [sic] lacking in credibility.

12. . . . [Respondent] was ordered to undergo a Comprehensive Clinical Assessment. Two appointments were scheduled; he did not appear for the first appointment and left thirty (30) minutes into the session on the re-scheduled appointment. [Respondent] presents as angry and defensive. . . .

. . . .

16. . . . [Respondent] has not provided any care, discipline or supervision of [M.A.W.] since his release from incarceration in August of 2014 . . . .

Based upon these and other findings from the termination hearing, DSS met its burden of proving sufficient facts to enable the trial court to establish by clear, cogent, and convincing evidence that grounds existed to justify termination. *See, e.g.,* *In re Ballard*, 311 N.C. at 716, 319 S.E.2d at 232 (citing former N.C.G.S. § 7A-289.30(e) (relating to termination of parental rights), repealed by Act of Oct. 22, 1998, ch. 202, sec. 5, 1997 N.C. Sess. Laws (Reg. Sess. 1998) 695, 742 (recodifying the Juvenile Code)); *see* N.C.G.S. § 7B-1111(b) (2015).

After review of the testimony during the hearing and the record on appeal, we cannot agree with the conclusion of the Court of Appeals that "there was no evidence before the trial court, and no findings of fact, that father had previously neglected [M.A.W.]" *In re M.A.W.*, ___ N.C. App. at ___, 787 S.E.2d at 463. The trial court properly found that past neglect was established by DSS and that there was a likelihood of repetition of neglect. We therefore hold that the trial court did not err in concluding that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1) to terminate

father's parental rights. Accordingly, we reverse the decision of the Court of Appeals reversing the trial court's order terminating the parental rights of respondent and instruct that court to reinstate the trial court's order.

REVERSED.