IN THE SUPREME COURT OF NORTH CAROLINA

 2022-NCSC-41

 No. 215A21

 Filed 18 March 2022

 IN THE MATTER OF: M.S.L. a/k/a M.S.H.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on

 9 March 2021 by Judge Denise S. Hartsfield in District Court, Forsyth County. This

 matter was calendared for argument in the Supreme Court on 18 February 2022 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 Theresa A. Boucher for petitioner-appellee Forsyth County Department of Social
 Services.

 Parker Poe Adams & Bernstein LLP, by Maya Madura Engle, for Guardian
 ad Litem.

 Benjamin J. Kull for respondent-appellant.

 NEWBY, Chief Justice.

¶1 Respondent-father appeals from the trial court’s order terminating his

 parental rights to M.S.L. a/k/a M.S.H. (Monica).1 Because we hold the trial court did

 not err in terminating respondent’s parental rights, we affirm the trial court’s order.

 1 A pseudonym is used in this opinion to protect the juvenile’s identity and for ease of

 reading.
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

¶2 Monica was born on 2 March 2019. Monica’s biological mother, who is not a

 party to this appeal, has an extensive history of drug use, including during her

 pregnancy with Monica. At birth Monica tested positive for substances due to her

 mother’s drug use. On 13 March 2019, the Forsyth County Department of Social

 Services (DSS) obtained custody of Monica. That same day she was placed in a foster

 home, where she has remained.

¶3 Initially Monica’s mother identified C. Hall as Monica’s father. Hall signed an

 affidavit of paternity. Paternity tests later revealed, however, that he was not

 Monica’s biological father. On 21 November 2019, respondent reported to DSS that

 he believed he was Monica’s father. Respondent and Monica’s mother had met years

 earlier when respondent was dating Monica’s maternal grandmother. Respondent

 later revealed to the social worker that their relationship was “not something that

 was in the open” and was a “dirty old man type of thing.”

¶4 After respondent reported he might be Monica’s father, his paternity tests were

 rescheduled multiple times, partially attributable to respondent. Ultimately,

 respondent’s 21 January 2020 paternity test confirmed he was Monica’s father.

 Respondent met with DSS in early March of 2020. While at first respondent reported

 that he did not use drugs with the mother, shortly thereafter respondent admitted

 that he and the mother had “gotten high together” before she was pregnant.

 Respondent also told the social worker that the mother had texted him a few weeks
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

 before the meeting about “getting . . . drugs.” Respondent stated that though his

 “drug of choice” was cocaine, he had not used drugs in the six months preceding March

 of 2020.

¶5 The trial court held a hearing in the case on 24 June 2020. In the resulting

 juvenile order dated 22 July 2020, the trial court found that respondent, who has five

 older children, had history with Child Protective Services in both Illinois and Virginia

 relating to his older children from when he lived in those states. Respondent also

 reported that he had spent five months imprisoned in Illinois for leaving the state

 with his children without their mother’s consent. At the time of the hearing,

 respondent was on probation for a Level 5 DWI. Respondent also had previous

 convictions for DWIs, which resulted in the loss of his driver’s license, as well as

 convictions for possession of drug paraphernalia. Additionally, respondent had prior

 convictions in Virginia for soliciting for prostitution and using a vehicle to promote

 prostitution.

¶6 Respondent reported that he had completed a substance abuse assessment

 sometime in or before 2019, but he refused a drug screen on 11 June 2020. Though

 the court had not ordered visitation, the court found that DSS had arranged weekly

 visits via video conference. Respondent had only attended (or logged in to) three of

 the nine total video visits.
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

¶7 In that same order, however, the trial court established the primary plan as

 reunification with respondent and the secondary plan as adoption. To achieve

 reunification, the trial court ordered respondent to (1) complete a mental health and

 substance abuse assessment and follow all recommendations, (2) comply with random

 hair and urine drug screens, and (3) enter into an out-of-home family services

 agreement and a visitation plan with DSS. The court provided respondent with

 weekly visitation via phone or video.

¶8 The trial court entered another juvenile order on 22 October 2020. In that

 order, the trial court found the following: the day after the 24 June 2020 hearing,

 respondent submitted to hair and urine drug screens, both of which returned positive

 results indicating cocaine use.2 Shortly thereafter, respondent admitted that he had

 used 11 days prior to the 25 June 2020 screening. On 5 August 2020, respondent

 reported that he had continued using cocaine because he was stressed.

¶9 On 6 August 2020, respondent took a urine screen, which was negative for

 substances. On 18 August 2020, respondent completed a clinical assessment and was

 diagnosed with cocaine use disorder. Respondent indicated at that time he had been

 clean for three weeks. Toward the end of August, respondent completed part of his

 psychological evaluation/parenting capacity assessment. Dr. Bennett, who conducted

 2 Between the date of respondent’s 25 June 2020 drug screen and 6 August 2020 drug

 screen, on 22 July 2020, the court terminated the mother and Hall’s rights to the child.
 Neither the mother nor Hall are parties to this appeal.
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

 the assessment, concluded respondent had difficulty acknowledging the nature of his

 substance use problem, struggled with defensiveness, impulse control, and poor

 judgment, and presented with “significant grandiosity and [had] limited insight into

 his short period of recovery.” Dr. Bennett concluded that respondent’s actions did not

 support his readiness to be a parent. Dr. Bennett made six recommendations: he

 concluded that respondent should (1) complete all random drug tests and have no

 refused tests, or those would count as positive tests; (2) attend counseling; (3)

 complete a substance use disorder assessment and follow treatment

 recommendations, including staying in contact with a treatment provider and

 attending substance abuse support groups; (4) obtain, maintain, and document stable

 housing and finances; (5) participate in treatment for substance use disorder; and (6)

 continue to be involved in Monica’s life.

¶ 10 The trial court additionally found that respondent had attended seven virtual

 visits, failed to attend one visit, and that three visits were rescheduled because

 respondent did not confirm the visits in advance. Because of respondent’s positive

 test in June of 2020 and his later admissions, the court concluded that respondent

 had previously provided false testimony to the court about his drug usage. Based

 upon all of the evidence, the trial court changed the permanent plan to adoption with

 the secondary plan as reunification with the father. The trial court ordered DSS to

 file a petition to terminate respondent’s parental rights within 60 days.
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

¶ 11 On 5 November 2020, DSS filed a petition to terminate respondent’s parental

 rights pursuant to N.C.G.S. § 7B-1111(a)(1) (2021) (neglect), N.C.G.S. § 7B-1111(a)(2)

 (willfully leaving the child outside the home without making reasonable progress),

 and N.C.G.S. § 7B-1111(a)(5) (failure to legitimate). Respondent filed an answer

 wherein he admitted all of the allegations in the complaint. Respondent, however,

 requested to be heard regarding the best interests determination and stated that

 based on the best interests factors set forth in N.C.G.S. § 7B-1110 (2021), the trial

 court should not terminate respondent’s parental rights.

¶ 12 On 10 February 2021, the trial court held a hearing on the termination

 petition. When questioned at the hearing, respondent “agreed . . . that [DSS] ha[d]

 enough evidence to go forward and prevail” on the grounds asserted for termination

 in the termination petition. Respondent confirmed that he had not come to the

 hearing to be heard on the grounds for termination but wanted to be heard on the

 best interests determination. In an order entered 9 March 2021, the trial court

 recognized respondent’s stipulation as to the circumstances supporting the grounds

 for termination, made findings of fact consistent with those alleged in the termination

 petition to which respondent stipulated, and concluded that grounds existed to

 terminate respondent’s rights based on all three grounds alleged in the petition. The

 trial court also determined that terminating respondent’s rights was in Monica’s best

 interests. Therefore, the trial court terminated respondent’s parental rights.
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

¶ 13 On appeal respondent argues (1) that the trial court erred by failing to make a

 sufficient finding that it had subject matter jurisdiction, and (2) that the findings of

 fact do not support the conclusions of law that grounds exist to terminate

 respondent’s parental rights. We address each argument in turn.

 I. Jurisdiction

¶ 14 Respondent first argues that the trial court did not make a finding pursuant

 to N.C.G.S. § 7B-1101 that it had jurisdiction, meaning the court could not exercise

 jurisdiction over the matter here. Respondent concedes that the record supports a

 conclusion that the trial court had jurisdiction over the matter. Respondent also

 recognizes that in the termination order, the trial court stated that “[t]he Court has

 jurisdiction over the parties and subject matter of this action.” Nevertheless,

 respondent argues that the juvenile code, set forth in the North Carolina General

 Statutes, requires a specific finding of jurisdiction, and that the trial court failed to

 satisfy that statutory requirement here.

¶ 15 N.C.G.S. § 7B-1101 provides, in part,

 The court shall have exclusive original jurisdiction to hear
 and determine any petition or motion relating to
 termination of parental rights to any juvenile who resides
 in, is found in, or is in the legal or actual custody of a county
 department of social services or licensed child-placing
 agency in the district at the time of filing of the petition or
 motion. The court shall have jurisdiction to terminate the
 parental rights of any parent irrespective of the age of the
 parent. Provided, that before exercising jurisdiction under
 this Article, the court shall find that it has jurisdiction to
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

 make a child-custody determination under the provisions of
 G.S. 50A-201, 50A-203, or 50A-204.

 N.C.G.S. § 7B-1101 (2021) (emphasis added). This Court has previously determined

 that compliance with the juvenile code does not require a finding that explicitly

 mirrors the relevant statutory language. See In re K.N., 378 N.C. 450, 2021-NCSC-

 98, ¶ 22 (concluding that the trial court had subject matter jurisdiction over the case

 where the trial court only made a general finding that it had jurisdiction and the

 record supported such a determination), petition for reh’g denied, No. 459A20 (N.C.

 Sept. 24, 2021) (order).

¶ 16 Here the trial court stated that it “has jurisdiction over the parties and the

 subject matter of this action.” The record here supports the trial court’s finding and

 a conclusion that the trial court had both subject matter and personal jurisdiction in

 this case. Given that Monica resided in North Carolina since her birth, North

 Carolina is her “home state.” As respondent concedes, while the case here was

 pending, this Court rejected the same argument that respondent has raised, see In re

 K.N., ¶¶ 18–22. Thus, because the trial court’s finding and the record support a

 conclusion that the trial court had subject matter jurisdiction here, respondent’s

 argument is overruled.

 II. Grounds for Termination

¶ 17 Respondent next asserts that the trial court improperly relied on respondent’s

 stipulation at the hearing, which amounted to an impermissible stipulation to
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

 conclusions of law.3 Additionally, respondent asserts that the trial court’s findings of

 fact do not support a conclusion of law that respondent neglected Monica, and thus

 his parental rights were not subject to termination on this ground. Respondent argues

 that because Monica was placed into DSS custody based upon the mother’s neglect of

 the child, the findings do not show that respondent neglected the child. Respondent

 asserts that any conclusion that allows for termination of parental rights here, where

 he was not responsible for the initial neglect, undermines the legislature’s stated

 intent in N.C.G.S. § 7B-1111(a)(1).

¶ 18 “The court may terminate the parental rights upon a finding . . . [t]he parent

 has abused or neglected the juvenile. The juvenile shall be deemed to be abused or

 neglected if the court finds the juvenile to be . . . a neglected juvenile within the

 meaning of G.S. 7B-101.” N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is defined in

 3 In addition to the ground discussed below, respondent also contends that the trial

 court erred by concluding that his parental rights were subject to termination based on
 N.C.G.S. § 7B-1111(a)(2) (willfully leaving the child outside the home without making
 reasonable progress) and N.C.G.S. § 7B-1111(a)(5) (failure to legitimate). Because the trial
 court properly terminated respondent's parental rights based on N.C.G.S. § 7B-1111(a)(1) as
 we discuss hereinafter, we need not address these arguments. See In re Moore, 306 N.C. 394,
 404, 293 S.E.2d 127, 133 (1982) (holding that an appealed order should be affirmed when any
 one of the grounds of the trial court is supported by findings of fact based on clear, cogent,
 and convincing evidence); see also N.C.G.S. § 7B-1111(a) (“The court may terminate the
 parental rights upon a finding of one or more [grounds for termination.]”).
 Notably, though respondent only challenged the trial court’s best interests
 determination at the trial court proceeding, respondent abandoned any argument related to
 best interests on appeal. Moreover, though respondent stipulated to the circumstances
 supporting the alleged grounds for termination at the trial court, now, for the first time on
 appeal, respondent challenges the alleged grounds for termination.
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

pertinent part as a juvenile “whose parent, guardian, custodian, or caretaker does not

provide proper care, supervision, or discipline; or who has been abandoned; . . . or who

lives in an environment injurious to the juvenile’s welfare.” N.C.G.S. § 7B-101(15)

(2019). “To terminate parental rights based on neglect, ‘if the child has been

separated from the parent for a long period of time, there must be a showing of past

neglect and a likelihood of future neglect by the parent.’ ” In re D.L.A.D., 375 N.C.

565, 567, 849 S.E.2d 811, 814 (2020) (quoting In re D.L.W., 368 N.C. 835, 843, 788

S.E.2d 162, 167 (2016)).

 This Court has repeatedly stated that “[w]hen determining
 whether a child is neglected, the circumstances and
 conditions surrounding the child are what matters, not the
 fault or culpability of the parent.” In re Z.K., 375 N.C. 370,
 373, 847 S.E.2d 746, 748–49 (2020); see also In re S.D., 374
 N.C. 67, 75, 839 S.E.2d 315, 322 (2020) (“[T]here is no
 requirement that the parent whose rights are subject to
 termination on the grounds of neglect be responsible for the
 prior adjudication of neglect.”); In re J.M.J.-J., 374 N.C.
 553, 564, 843 S.E.2d 94, 104 (2020) (rejecting the
 respondent's argument “that the trial court's conclusion of
 neglect was erroneous because he was not responsible for
 the conditions that resulted in [his daughter's] placement
 in DSS custody”).

In re M.Y.P., 378 N.C. 667, 2021-NCSC-113, ¶ 16 (alterations in original).

Additionally, “[a] parent’s failure to make progress in completing a case plan is

indicative of a likelihood of future neglect.” In re M.A., 374 N.C. 865, 870, 844 S.E.2d

916, 921 (2020) (quoting In re M.J.S.M., 257 N.C. App. 633, 637, 810 S.E.2d 370, 373

(2018)); see also In re W.K., 376 N.C. 269, 278–79, 852 S.E.2d 83, 91 (2020) (noting
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

 that “[b]ased on respondent-father’s failure to follow his case plan and the trial court’s

 orders and his continued abuse of controlled substances, the trial court found that

 there was a likelihood the children would be neglected if they were returned to his

 care”).

¶ 19 After respondent stipulated to the circumstances surrounding the grounds to

 terminate his parental rights, the trial court made the following findings and

 conclusions:

 7. [Respondent], the biological father of [Monica] has
 neglected her.

 8. On May 20, 2019, [Monica] was adjudicated to be a
 neglected child within the meaning of N.C.G.S. 7B-101.

 9. [Monica] has been in the nonsecure and legal custody of
 the Forsyth County Department of Social Services since
 March 13, 2019. Since that time, [respondent] has
 neglected his daughter and has failed to demonstrate to the
 Juvenile Court that he can provide a safe home for the child
 pursuant to the provisions of N.C.G.S. 7B-101(19).

 10. [Respondent] is the biological father of the child. He
 presented himself to the Forsyth County Department of
 Social Services, the legal custodian of the child on
 November 21, 2019 stating that he believed himself to be
 the father of [Monica]. [Respondent] delayed taking a
 paternity test multiple times and paternity was not
 confirmed until January 21, 2020.

 11. [Respondent] has continued to neglect [Monica] by
 failing to engage in efforts in order to provide a safe home
 for the child and demonstrate that he can meet her basic
 needs.
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

 12. [Respondent] has failed to comply with substance abuse
 treatment and he has continued to use controlled
 substances.

 13. [Respondent] has failed to comply with the
 recommendations of his Parenting Capacity Psychological
 assessment.

 14. Return of [Monica] to the care, custody and control of
 [respondent] will result in a strong likelihood of repeated
 of [sic] neglect of the child.

 ....

 17. The grounds alleged in N.C.G.S. 7B-1111(a)(1), (2) and
 (5) as they relate to [respondent] were stipulated to and
 have been proven by clear, cogent and convincing evidence.

Additionally, the trial court found that respondent had a long-standing substance

abuse addiction, had previously lied to the court about his substance use, and that he

continued to test positive for cocaine use after 11 September 2020 despite reporting

that the last date of cocaine use was 11 September 2020. The trial court also found

that respondent adamantly denied being an addict and adamantly denied using

cocaine after 11 September 2020. The trial court found relevant that respondent has

five adult children with whom he has no ongoing relationship, all of whom he had not

seen in years, though he contended that he wanted Monica to know these adult

children. Finally, the trial court noted that it was suspicious of respondent’s “motives

given his past indiscretions including a sexual relationship with [Monica’s] mother

and grandmother at different times.”
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

¶ 20 While this case is somewhat unusual in that respondent admitted all

 allegations in the termination petition and stated that he did not wish to challenge

 the circumstances surrounding the grounds to terminate his parental rights, this

 Court has previously recognized that an individual can stipulate to facts underlying

 a juvenile proceeding, even where those facts ultimately support a termination order.

 See In re M.Y.P., 378 N.C. 667, 2021-NCSC-113, ¶ 16 (recognizing that the respondent

 had stipulated to findings of fact supporting an adjudication order, which ultimately

 supported the trial court’s determination in the termination order that the child had

 been previously neglected). Therefore, we reject respondent’s argument that the

 stipulation to the circumstances here was improper, as, viewed properly, respondent’s

 stipulation related to factual circumstances surrounding the grounds for termination.

¶ 21 The trial court’s findings as to neglect here were limited because of

 respondent’s factual stipulations.4 Nonetheless, they are sufficient for the trial court

 to conclude that respondent neglected Monica within the meaning of the statute.

 While respondent was not responsible for Monica’s initial placement with DSS,

 respondent stipulated that Monica had previously been adjudicated neglected, which

 stemmed from Monica testing positive for controlled substances at birth. Despite this

 4 The trial court’s order here is consistent with what respondent chose to argue at the

 trial court given that he stipulated to the circumstances surrounding the grounds for
 termination, did not wish to be heard regarding those grounds, and only wished to be heard
 regarding the best interests determination.
 IN RE M.S.L. A/K/A M.S.H.

 2022-NCSC-41

 Opinion of the Court

 history, after respondent presented himself as Monica’s father, he continued to use

 controlled substances, contrary to the recommendations from his parenting capacity

 assessment and knowing the trial court’s stated plan for the juvenile. Respondent

 also failed to recognize the severity of his continuous drug abuse and was repeatedly

 dishonest with the trial court about his continued cocaine use. As such, the trial court

 properly terminated respondent’s parental rights based upon neglect. See In re

 M.A.W., 370 N.C. 149, 153–55, 804 S.E.2d 513, 517–18 (2017) (concluding that the

 trial court properly terminated the respondent’s parental rights based upon neglect

 where, though the respondent was imprisoned at the time the child was originally

 adjudicated neglected, the child was placed into DSS’ care based upon the mother’s

 substance abuse and, after the respondent’s release from prison, he failed to follow

 through with the court’s directives).

¶ 22 Here the trial court’s findings of fact are supported by clear, cogent, and

 convincing evidence, and those findings support the trial court’s conclusions of law.

 Accordingly, we affirm the trial court's termination order.

 AFFIRMED.