IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-41

No. 215A21

Filed 18 March 2022

IN THE MATTER OF: M.S.L. a/k/a M.S.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 9 March 2021 by Judge Denise S. Hartsfield in District Court, Forsyth County. This matter was calendared for argument in the Supreme Court on 18 February 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Theresa A. Boucher for petitioner-appellee Forsyth County Department of Social Services.*
>
> *Parker Poe Adams & Bernstein LLP, by Maya Madura Engle, for Guardian ad Litem.*
>
> *Benjamin J. Kull for respondent-appellant.*

NEWBY, Chief Justice.

¶ 1   Respondent-father appeals from the trial court's order terminating his parental rights to M.S.L. a/k/a M.S.H. (Monica).[1] Because we hold the trial court did not err in terminating respondent's parental rights, we affirm the trial court's order.

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

¶ 2 Monica was born on 2 March 2019. Monica's biological mother, who is not a party to this appeal, has an extensive history of drug use, including during her pregnancy with Monica. At birth Monica tested positive for substances due to her mother's drug use. On 13 March 2019, the Forsyth County Department of Social Services (DSS) obtained custody of Monica. That same day she was placed in a foster home, where she has remained.

¶ 3 Initially Monica's mother identified C. Hall as Monica's father. Hall signed an affidavit of paternity. Paternity tests later revealed, however, that he was not Monica's biological father. On 21 November 2019, respondent reported to DSS that he believed he was Monica's father. Respondent and Monica's mother had met years earlier when respondent was dating Monica's maternal grandmother. Respondent later revealed to the social worker that their relationship was "not something that was in the open" and was a "dirty old man type of thing."

¶ 4 After respondent reported he might be Monica's father, his paternity tests were rescheduled multiple times, partially attributable to respondent. Ultimately, respondent's 21 January 2020 paternity test confirmed he was Monica's father. Respondent met with DSS in early March of 2020. While at first respondent reported that he did not use drugs with the mother, shortly thereafter respondent admitted that he and the mother had "gotten high together" before she was pregnant. Respondent also told the social worker that the mother had texted him a few weeks

before the meeting about "getting . . . drugs." Respondent stated that though his "drug of choice" was cocaine, he had not used drugs in the six months preceding March of 2020.

¶ 5 The trial court held a hearing in the case on 24 June 2020. In the resulting juvenile order dated 22 July 2020, the trial court found that respondent, who has five older children, had history with Child Protective Services in both Illinois and Virginia relating to his older children from when he lived in those states. Respondent also reported that he had spent five months imprisoned in Illinois for leaving the state with his children without their mother's consent. At the time of the hearing, respondent was on probation for a Level 5 DWI. Respondent also had previous convictions for DWIs, which resulted in the loss of his driver's license, as well as convictions for possession of drug paraphernalia. Additionally, respondent had prior convictions in Virginia for soliciting for prostitution and using a vehicle to promote prostitution.

¶ 6 Respondent reported that he had completed a substance abuse assessment sometime in or before 2019, but he refused a drug screen on 11 June 2020. Though the court had not ordered visitation, the court found that DSS had arranged weekly visits via video conference. Respondent had only attended (or logged in to) three of the nine total video visits.

¶ 7    In that same order, however, the trial court established the primary plan as reunification with respondent and the secondary plan as adoption. To achieve reunification, the trial court ordered respondent to (1) complete a mental health and substance abuse assessment and follow all recommendations, (2) comply with random hair and urine drug screens, and (3) enter into an out-of-home family services agreement and a visitation plan with DSS. The court provided respondent with weekly visitation via phone or video.

¶ 8    The trial court entered another juvenile order on 22 October 2020. In that order, the trial court found the following: the day after the 24 June 2020 hearing, respondent submitted to hair and urine drug screens, both of which returned positive results indicating cocaine use.[2] Shortly thereafter, respondent admitted that he had used 11 days prior to the 25 June 2020 screening. On 5 August 2020, respondent reported that he had continued using cocaine because he was stressed.

¶ 9    On 6 August 2020, respondent took a urine screen, which was negative for substances. On 18 August 2020, respondent completed a clinical assessment and was diagnosed with cocaine use disorder. Respondent indicated at that time he had been clean for three weeks. Toward the end of August, respondent completed part of his psychological evaluation/parenting capacity assessment. Dr. Bennett, who conducted

---

[2] Between the date of respondent's 25 June 2020 drug screen and 6 August 2020 drug screen, on 22 July 2020, the court terminated the mother and Hall's rights to the child. Neither the mother nor Hall are parties to this appeal.

the assessment, concluded respondent had difficulty acknowledging the nature of his substance use problem, struggled with defensiveness, impulse control, and poor judgment, and presented with "significant grandiosity and [had] limited insight into his short period of recovery." Dr. Bennett concluded that respondent's actions did not support his readiness to be a parent. Dr. Bennett made six recommendations: he concluded that respondent should (1) complete all random drug tests and have no refused tests, or those would count as positive tests; (2) attend counseling; (3) complete a substance use disorder assessment and follow treatment recommendations, including staying in contact with a treatment provider and attending substance abuse support groups; (4) obtain, maintain, and document stable housing and finances; (5) participate in treatment for substance use disorder; and (6) continue to be involved in Monica's life.

¶ 10    The trial court additionally found that respondent had attended seven virtual visits, failed to attend one visit, and that three visits were rescheduled because respondent did not confirm the visits in advance. Because of respondent's positive test in June of 2020 and his later admissions, the court concluded that respondent had previously provided false testimony to the court about his drug usage. Based upon all of the evidence, the trial court changed the permanent plan to adoption with the secondary plan as reunification with the father. The trial court ordered DSS to file a petition to terminate respondent's parental rights within 60 days.

On 5 November 2020, DSS filed a petition to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) (2021) (neglect), N.C.G.S. § 7B-1111(a)(2) (willfully leaving the child outside the home without making reasonable progress), and N.C.G.S. § 7B-1111(a)(5) (failure to legitimate). Respondent filed an answer wherein he admitted all of the allegations in the complaint. Respondent, however, requested to be heard regarding the best interests determination and stated that based on the best interests factors set forth in N.C.G.S. § 7B-1110 (2021), the trial court should not terminate respondent's parental rights.

On 10 February 2021, the trial court held a hearing on the termination petition. When questioned at the hearing, respondent "agreed . . . that [DSS] ha[d] enough evidence to go forward and prevail" on the grounds asserted for termination in the termination petition. Respondent confirmed that he had not come to the hearing to be heard on the grounds for termination but wanted to be heard on the best interests determination. In an order entered 9 March 2021, the trial court recognized respondent's stipulation as to the circumstances supporting the grounds for termination, made findings of fact consistent with those alleged in the termination petition to which respondent stipulated, and concluded that grounds existed to terminate respondent's rights based on all three grounds alleged in the petition. The trial court also determined that terminating respondent's rights was in Monica's best interests. Therefore, the trial court terminated respondent's parental rights.

¶ 13        On appeal respondent argues (1) that the trial court erred by failing to make a sufficient finding that it had subject matter jurisdiction, and (2) that the findings of fact do not support the conclusions of law that grounds exist to terminate respondent's parental rights. We address each argument in turn.

## I.    Jurisdiction

¶ 14        Respondent first argues that the trial court did not make a finding pursuant to N.C.G.S. § 7B-1101 that it had jurisdiction, meaning the court could not exercise jurisdiction over the matter here. Respondent concedes that the record supports a conclusion that the trial court had jurisdiction over the matter. Respondent also recognizes that in the termination order, the trial court stated that "[t]he Court has jurisdiction over the parties and subject matter of this action." Nevertheless, respondent argues that the juvenile code, set forth in the North Carolina General Statutes, requires a specific finding of jurisdiction, and that the trial court failed to satisfy that statutory requirement here.

¶ 15        N.C.G.S. § 7B-1101 provides, in part,

> The court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion. The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the age of the parent. *Provided, that before exercising jurisdiction under this Article, the court shall find that it has jurisdiction to*

> *make a child-custody determination under the provisions of*
> *G.S. 50A-201, 50A-203, or 50A-204.*

N.C.G.S. § 7B-1101 (2021) (emphasis added). This Court has previously determined that compliance with the juvenile code does not require a finding that explicitly mirrors the relevant statutory language. *See In re K.N.*, 378 N.C. 450, 2021-NCSC-98, ¶ 22 (concluding that the trial court had subject matter jurisdiction over the case where the trial court only made a general finding that it had jurisdiction and the record supported such a determination), *petition for reh'g denied*, No. 459A20 (N.C. Sept. 24, 2021) (order).

¶ 16    Here the trial court stated that it "has jurisdiction over the parties and the subject matter of this action." The record here supports the trial court's finding and a conclusion that the trial court had both subject matter and personal jurisdiction in this case. Given that Monica resided in North Carolina since her birth, North Carolina is her "home state." As respondent concedes, while the case here was pending, this Court rejected the same argument that respondent has raised, *see In re K.N.*, ¶¶ 18–22. Thus, because the trial court's finding and the record support a conclusion that the trial court had subject matter jurisdiction here, respondent's argument is overruled.

## II.    Grounds for Termination

¶ 17    Respondent next asserts that the trial court improperly relied on respondent's stipulation at the hearing, which amounted to an impermissible stipulation to

conclusions of law.[3] Additionally, respondent asserts that the trial court's findings of fact do not support a conclusion of law that respondent neglected Monica, and thus his parental rights were not subject to termination on this ground. Respondent argues that because Monica was placed into DSS custody based upon the mother's neglect of the child, the findings do not show that respondent neglected the child. Respondent asserts that any conclusion that allows for termination of parental rights here, where he was not responsible for the initial neglect, undermines the legislature's stated intent in N.C.G.S. § 7B-1111(a)(1).

¶ 18     "The court may terminate the parental rights upon a finding . . . [t]he parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101." N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is defined in

---

[3] In addition to the ground discussed below, respondent also contends that the trial court erred by concluding that his parental rights were subject to termination based on N.C.G.S. § 7B-1111(a)(2) (willfully leaving the child outside the home without making reasonable progress) and N.C.G.S. § 7B-1111(a)(5) (failure to legitimate). Because the trial court properly terminated respondent's parental rights based on N.C.G.S. § 7B-1111(a)(1) as we discuss hereinafter, we need not address these arguments. *See In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982) (holding that an appealed order should be affirmed when any one of the grounds of the trial court is supported by findings of fact based on clear, cogent, and convincing evidence); *see also* N.C.G.S. § 7B-1111(a) ("The court may terminate the parental rights upon a finding of one or more [grounds for termination.]").

Notably, though respondent only challenged the trial court's best interests determination at the trial court proceeding, respondent abandoned any argument related to best interests on appeal. Moreover, though respondent stipulated to the circumstances supporting the alleged grounds for termination at the trial court, now, for the first time on appeal, respondent challenges the alleged grounds for termination.

pertinent part as a juvenile "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; or who has been abandoned; . . . or who lives in an environment injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2019). "To terminate parental rights based on neglect, 'if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent.' " *In re D.L.A.D.*, 375 N.C. 565, 567, 849 S.E.2d 811, 814 (2020) (quoting *In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016)).

> This Court has repeatedly stated that "[w]hen determining whether a child is neglected, the circumstances and conditions surrounding the child are what matters, not the fault or culpability of the parent." *In re Z.K.*, 375 N.C. 370, 373, 847 S.E.2d 746, 748–49 (2020); *see also In re S.D.*, 374 N.C. 67, 75, 839 S.E.2d 315, 322 (2020) ("[T]here is no requirement that the parent whose rights are subject to termination on the grounds of neglect be responsible for the prior adjudication of neglect."); *In re J.M.J.-J.*, 374 N.C. 553, 564, 843 S.E.2d 94, 104 (2020) (rejecting the respondent's argument "that the trial court's conclusion of neglect was erroneous because he was not responsible for the conditions that resulted in [his daughter's] placement in DSS custody").

*In re M.Y.P.*, 378 N.C. 667, 2021-NCSC-113, ¶ 16 (alterations in original). Additionally, "[a] parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.A.*, 374 N.C. 865, 870, 844 S.E.2d 916, 921 (2020) (quoting *In re M.J.S.M.*, 257 N.C. App. 633, 637, 810 S.E.2d 370, 373 (2018)); *see also In re W.K.*, 376 N.C. 269, 278–79, 852 S.E.2d 83, 91 (2020) (noting

that "[b]ased on respondent-father's failure to follow his case plan and the trial court's orders and his continued abuse of controlled substances, the trial court found that there was a likelihood the children would be neglected if they were returned to his care").

¶ 19        After respondent stipulated to the circumstances surrounding the grounds to terminate his parental rights, the trial court made the following findings and conclusions:

> 7. [Respondent], the biological father of [Monica] has neglected her.
>
> 8. On May 20, 2019, [Monica] was adjudicated to be a neglected child within the meaning of N.C.G.S. 7B-101.
>
> 9. [Monica] has been in the nonsecure and legal custody of the Forsyth County Department of Social Services since March 13, 2019. Since that time, [respondent] has neglected his daughter and has failed to demonstrate to the Juvenile Court that he can provide a safe home for the child pursuant to the provisions of N.C.G.S. 7B-101(19).
>
> 10. [Respondent] is the biological father of the child. He presented himself to the Forsyth County Department of Social Services, the legal custodian of the child on November 21, 2019 stating that he believed himself to be the father of [Monica]. [Respondent] delayed taking a paternity test multiple times and paternity was not confirmed until January 21, 2020.
>
> 11. [Respondent] has continued to neglect [Monica] by failing to engage in efforts in order to provide a safe home for the child and demonstrate that he can meet her basic needs.

12. [Respondent] has failed to comply with substance abuse treatment and he has continued to use controlled substances.

13. [Respondent] has failed to comply with the recommendations of his Parenting Capacity Psychological assessment.

14. Return of [Monica] to the care, custody and control of [respondent] will result in a strong likelihood of repeated of [sic] neglect of the child.

. . . .

17. The grounds alleged in N.C.G.S. 7B-1111(a)(1), (2) and (5) as they relate to [respondent] were stipulated to and have been proven by clear, cogent and convincing evidence.

Additionally, the trial court found that respondent had a long-standing substance abuse addiction, had previously lied to the court about his substance use, and that he continued to test positive for cocaine use after 11 September 2020 despite reporting that the last date of cocaine use was 11 September 2020. The trial court also found that respondent adamantly denied being an addict and adamantly denied using cocaine after 11 September 2020. The trial court found relevant that respondent has five adult children with whom he has no ongoing relationship, all of whom he had not seen in years, though he contended that he wanted Monica to know these adult children. Finally, the trial court noted that it was suspicious of respondent's "motives given his past indiscretions including a sexual relationship with [Monica's] mother and grandmother at different times."

¶ 20        While this case is somewhat unusual in that respondent admitted all allegations in the termination petition and stated that he did not wish to challenge the circumstances surrounding the grounds to terminate his parental rights, this Court has previously recognized that an individual can stipulate to facts underlying a juvenile proceeding, even where those facts ultimately support a termination order. *See In re M.Y.P.*, 378 N.C. 667, 2021-NCSC-113, ¶ 16 (recognizing that the respondent had stipulated to findings of fact supporting an adjudication order, which ultimately supported the trial court's determination in the termination order that the child had been previously neglected). Therefore, we reject respondent's argument that the stipulation to the circumstances here was improper, as, viewed properly, respondent's stipulation related to *factual* circumstances surrounding the grounds for termination.

¶ 21        The trial court's findings as to neglect here were limited because of respondent's factual stipulations.[4] Nonetheless, they are sufficient for the trial court to conclude that respondent neglected Monica within the meaning of the statute. While respondent was not responsible for Monica's initial placement with DSS, respondent stipulated that Monica had previously been adjudicated neglected, which stemmed from Monica testing positive for controlled substances at birth. Despite this

---

[4] The trial court's order here is consistent with what respondent chose to argue at the trial court given that he stipulated to the circumstances surrounding the grounds for termination, did not wish to be heard regarding those grounds, and only wished to be heard regarding the best interests determination.

history, after respondent presented himself as Monica's father, he continued to use controlled substances, contrary to the recommendations from his parenting capacity assessment and knowing the trial court's stated plan for the juvenile. Respondent also failed to recognize the severity of his continuous drug abuse and was repeatedly dishonest with the trial court about his continued cocaine use. As such, the trial court properly terminated respondent's parental rights based upon neglect. *See In re M.A.W.*, 370 N.C. 149, 153–55, 804 S.E.2d 513, 517–18 (2017) (concluding that the trial court properly terminated the respondent's parental rights based upon neglect where, though the respondent was imprisoned at the time the child was originally adjudicated neglected, the child was placed into DSS' care based upon the mother's substance abuse and, after the respondent's release from prison, he failed to follow through with the court's directives).

¶ 22     Here the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and those findings support the trial court's conclusions of law. Accordingly, we affirm the trial court's termination order.

AFFIRMED.