An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-34

Filed 18 March 2026

Gaston County, No. 22JT000317-350

IN RE:

M.C.B.

Minor Juvenile.

Appeal by respondent-father from order entered 24 September 2024 by Judge Pennie M. Thrower in Gaston County District Court. Heard in the Court of Appeals 23 September 2025.

*J. Thomas Diepenbrock for respondent-appellant-father.*

*J. Edward Yeager, Jr. for petitioner-appellee Gaston County Department of Health and Human Services.*

*Battle, Winslow, Scott & Wiley, PA, by M. Greg Crumpler, for appellee Guardian Ad Litem.*

GORE, Judge.

This appeal arises from an order of the District Court, Gaston County, terminating respondent-father's parental rights to his minor son, Maxwell,[1] on

---

[1] A pseudonym.

multiple statutory grounds under N.C.G.S. § 7B-1111(a), including willful abandonment. The trial court further determined that termination was in Maxwell's best interests. This Court has jurisdiction pursuant to N.C.G.S. §§ 7A-27(b)(2) and 7B-1001(a)(7). After careful review, we conclude that the trial court's findings are supported by clear, cogent, and convincing evidence and sustain its conclusion that respondent-father willfully abandoned the juvenile during the relevant six-month period. Accordingly, we affirm the trial court's order.

## I.

Maxwell was born in November 2022. Both Maxwell and his mother tested positive for controlled substances at the time of his birth. The mother, who is not a party to this appeal, informed the Gaston County Department of Social Services ("DSS") that she no longer wished to care for Maxwell and identified respondent-father as the possible father, later confirmed through DNA testing.

Respondent-father was incarcerated in the Cleveland County Jail from February 2023 until March 2024, when he was transferred to prison following convictions for possession of a firearm by a felon and possession with intent to sell and deliver methamphetamine. He had previously served time in federal prison from 2017 to 2020 on gang and racketeering charges, violated parole, and was incarcerated for 18 months before being released in February 2022.

Shortly after Maxwell's birth, DSS contacted respondent-father, who stated that if he was Maxwell's father, he wanted to be in his life, but also indicated he was

"not in a good place" to have Maxwell in his care. On 17 November 2022, Child Protective Services social worker Miya Beauford met with respondent-father, who acknowledged he could be Maxwell's father, stated he had been released from jail nine months earlier, had another child, and was "working on stability." He inquired about "seeing the baby" but took no further action to arrange visitation.

On 22 November 2022, DSS filed a juvenile petition alleging neglect and dependency, and obtained nonsecure custody of Maxwell. Maxwell was placed in foster care, where he has remained. Following a hearing on 27 February 2023, the district court adjudicated Maxwell neglected and dependent and ordered respondent-father to comply with a case plan.

The case plan required respondent-father to: (a) participate in parenting classes; (b) abstain from illegal activity; (c) complete a substance abuse assessment and any recommended treatment; (d) complete a mental health assessment if necessary and follow recommendations; (e) avoid domestic violence; (f) submit to random drug screening; (g) obtain and maintain employment; (h) provide proof of income; and (i) establish and maintain safe, independent housing. DSS sent case plans to respondent-father in April 2023 and July 2023 while he was in the Cleveland County Jail.

Adoption supervisor Jessica Clark-Rice testified that DSS corresponded with respondent-father by mail and phone and visited his residence, but he did not request visitation, send letters, cards, gifts, or other items to Maxwell, or inquire about

Maxwell's well-being during the relevant six-month period. Respondent-father never offered his mother as a placement option during this period. Paternal grandmother testified she first learned of Maxwell's existence in April or May 2024.

On 25 April 2024, DSS filed a petition to terminate respondent-father's parental rights ("TPR") alleging grounds under N.C.G.S. § 7B-1111(a)(1), (2), (6), and (7). Respondent-father was served while incarcerated. His first communication to DSS during the relevant period was a letter written after service objecting to termination and proposing that his mother assume custody.

On 24 September 2024, the district court entered an order terminating respondent-father's parental rights, concluding that grounds existed under § 7B-1111(a)(1), (2), (6), and (7) and that termination was in Maxwell's best interests. Respondent-father gave notice of appeal.

## II.

Our Juvenile Code provides a two-stage process for terminating parental rights: an adjudicatory stage followed by a dispositional stage. *See* N.C.G.S. §§ 7B-1109, -1110 (2023). During the adjudicatory stage, the petitioner bears the burden of proving the existence of any ground for termination alleged under N.C.G.S. § 7B-1111(a) by clear, cogent, and convincing evidence. N.C.G.S. § 7B-1109(e)–(f) (2023). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019) (citation omitted).

"Unchallenged findings are deemed to be supported by the evidence and are 'binding on appeal.'" *In re K.N.K.*, 374 N.C. 50, 53 (2020) (citation omitted). On appeal, we review only those findings necessary to support the trial court's determination that a ground for termination exists. *In re Z.O.G.-I.*, 375 N.C. 858, 861 (2020) (citation omitted). "[W]hether a trial court's findings of fact support its conclusions of law is reviewed de novo." *In re J.S.*, 374 N.C. 811, 814 (2020) (citation omitted).

Applying these principles, we consider whether the trial court's findings support its conclusion that respondent-father willfully abandoned the juvenile within the meaning of N.C.G.S. § 7B-1111(a)(7).

**III.**

A trial court may terminate parental rights upon finding that "the parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing" of the termination petition. N.C.G.S. § 7B-1111(a)(7) (2023). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Adoption of Searle*, 82 N.C. App. 273, 275 (1986) (citation omitted). Willful abandonment may occur "where a parent withholds his presence, his love, his care, [and] the opportunity to display filial affection," and willfully fails to provide "support and maintenance." *In re D.J.D.*, 171 N.C. App. 230, 241 (2005) (cleaned up).

Our Supreme Court has made clear that "incarceration, standing alone, is

neither a sword nor a shield" in termination of parental rights proceedings. *In re M.A.W.*, 370 N.C. 149, 153 (2017) (cleaned up). Although "a parent's options for showing affection while incarcerated are greatly limited, a parent will not be excused from showing interest in the child's welfare by whatever means available." *In re C.B.C.*, 373 N.C. 16, 19–20 (2019) (cleaned up). Accordingly, our appellate decisions require courts to recognize the constraints incarceration imposes on expressions of love and concern, while also requiring parents to make whatever efforts are possible to demonstrate care for their children. *In re A.G.D.*, 374 N.C. 317, 320 (2020). "The trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions" during "the relevant period." *In re A.J.P.*, 375 N.C. 516, 532 (2020) (quotation marks and citation omitted). The relevant period here is 26 October 2023 to 26 April 2024, the six months immediately preceding the filing of the TPR petition.

Respondent-father challenges two findings relevant to willful abandonment. He disputes the finding that he "failed to attend any visitation with the juvenile since the juvenile's birth" (Finding 40), claiming it is unsupported because a social worker told him hospital visitation required proof of paternity and because he was incarcerated and barred from visits until he made himself available to the court. He also disputes the finding that, before service of the TPR petition, he failed to attend hearings, send letters, call the Department or his counsel, or engage in case plan programs (Finding 53), arguing it is misleading given no evidence of the Department's

efforts to locate him before finding him in jail on 5 June 2023—four months after last contact—and no evidence of attempts to meet with him or secure his attendance at hearings.

The record contains clear, cogent, and convincing evidence supporting both findings. The social worker testified that no visits ever occurred, respondent made no effort to attend hearings or communicate with the Department or counsel despite having the ability to send letters or make calls from prison, and he sent no letters, cards, or gifts, made no inquiries, and requested no photographs, updates, or visitation before the petition was filed. The first time he contacted the Department was in a letter written after service of the petition, objecting to termination and proposing that his mother assume custody. Respondent admitted that before service of the petition he "hadn't had any contact with anybody" at DSS. It is undisputed he never visited the child, and the paternal grandmother testified she did not learn of Maxwell's existence until April or May 2024, undermining any claim that she had been arranged as a caregiver.

Respondent also cites Findings 41, 42, and 43 to argue the trial court overlooked his inability to work toward reunification while incarcerated and did not explicitly find willfulness. He does not challenge their accuracy, and they remain binding. *See Koufman v. Koufman*, 330 N.C. 93, 97 (1991). These findings—that he failed to meet the juvenile's basic needs, failed to demonstrate the ability to parent and protect, and failed to acknowledge the juvenile on holidays and birthdays—

further support willful abandonment.

His claim that incarceration and the Department's alleged failure to provide a case plan excused his lack of contact is unpersuasive. Incarceration does not preclude a finding of abandonment when a parent could have communicated by letters, calls, or other available means. *See In re D.E.M.*, 257 N.C. App. 618, 621 (2018) (citation omitted) (stating that although incarceration limits a parent's options for showing affection, the parent "will not be excused from showing interest in his child's welfare by whatever means available."). Even accepting that he did not receive a case plan until April 2023, he was represented by counsel and knew of the proceedings before the six-month period began. The record contains no evidence he attempted to communicate with the Department, his counsel, or the court to express interest in Maxwell or request updates.

The trial court's findings—that respondent had no contact, provided no support, and made no inquiries in the six months before the petition—are supported by competent evidence and sustain the conclusion that he willfully abandoned the child under N.C.G.S. § 7B-1111(a)(7). Because proof of any one ground under N.C.G.S. § 7B-1111(a) is sufficient to support termination, we do not address respondent's other arguments. *See In re N.T.U.*, 234 N.C. App. 722, 733 (2014).

**IV.**

The unchallenged and supported findings of fact demonstrate that respondent-father failed to have any contact with his son, provide any support, or make any

inquiries into his well-being during the six months immediately preceding the filing of the termination petition. These findings support the trial court's conclusion that respondent-father willfully abandoned the juvenile within the meaning of N.C.G.S. § 7B-1111(a)(7). Because the existence of a single statutory ground is sufficient to support termination, and termination is in the child's best interests, we affirm the order terminating respondent-father's parental rights.

AFFIRMED.

Judges FLOOD and FREEMAN concur.

Report per Rule 30(e).